MANSFIELD, Justice.
This case asks us to determine whether a criminal defendant who sues his or her attorney for legal malpractice must prove actual- innocence as a precondition to recovery. In Trobaugh v. Sondag, 668 N.W.2d 577, 583 n. 4 (Iowa 2003), we reserved judgment on this question.
In the present case, the plaintiff faults his former criminal .defense attorneys for allowing him to plead guilty to a specific ciime that lacked a factual basis. He sued the attorneys for malpractice, but the district court granted them summary judgment because the plaintiff could not show he was actually innocent of any offense that formed the basis for the underlying criminal case.
On our review,- we decline to adopt proof of actual innocence as a separate prerequisite to recovery for legal malpractice against criminal defense attorneys. Instead, we believe judges and juries should take innocence or guilt into account in determining whether the traditional elements of a legal malpractice claim have been established. We therefore reverse and remand for further proceedings.
I. Background Facts and Proceedings.
In 2006, Robert Barker placed crudely worded graffiti on the- wall of a public restroom in a park in Emmetsburg inviting young males interested in oral sex to contact a certain email address. In response to public complaints about the graffiti, law enforcement began an investigation. An agent of the Iowa Division of Criminal Investigation posed as a fifteen-year-old male named “Jayson” and established online contact with Barker using the email address.
. Eventually, Barker made plans to meet “Jayson” for a sex act. When Barker appeared at the arranged location, he was arrested. -The State charged Barker with attempted enticement of a minor, an aggravated misdemeanor, and lascivious acts with a child, a class “D” felony. See Iowa Code § 710, 10(3) (2005); id. § 709.8(3). Later, the court granted the State’s request to amend the second count to solicitation of a minor, to commit a sex act, a purported class “D” felony. See id. § 702.17; id. § 705.1; id. § 709.4(2)(c )(4).[1]
On October 3, Barker entered into a written plea agreement. Under the plea agreement, Barker was to plead guilty to the amended charge of solicitation. of a minor. The first count — attempted enticement — would be dismissed and the State would recommend a suspended sentence and probation with the condition that Barker complete sex-offender treatment through a residential treatment facility (RTF) in Sioux City.
*159 During this stage of the proceedings, Barker was represented by Thomas Ma-gee, whom Barker consulted concerning his decision to plead guilty. Thereafter, Magee closed his law office and the court allowed him to withdraw from fürther representation. The district court subsequently appointed Donald Capotosto to represent Barker.
On December 11, Barker’s plea and sentencing hearing took place in the Palo Alto County District . Court. . The terms of the plea agreement were put on the record. Barker, gave the following statement regarding the offense:
On August 16th I was in communication on line with what I presumed to be a 16-year-old male. That 15-year-old male had contacted me the day before after, ostensibly after coming across an e-mail address that I had written in a restroom— The . conversation was such that we came to an understanding that we would meet and possibly sexual activity could happen. That was the nature of the conversation. Obviously it was not a minor. It was a sting operation, and I was arrested.
The district court sentenced Barker to five-years imprisonment, suspended the sentence, and placed Barker on probation for the duration of his sentence. Additionally, in Clay County, Barker had pled guilty to second-degree theft, a class “D” felony, see Iowa Code § 714.2(2), with the understanding that the sentence on that charge would run concurrently with the sentence on the solicitation of a minor charge. ¡
Barker’s sentencing order for the solicitation offense prohibited him from engaging in unsuperyised contact with minors and provided that all internet access, including chat room use, needed to be preap-proved by his probation officer. The order permitted Barker to complete outpatient sex-offender treatment through Catholic Charities instead of mandating commitment to the RTF but required him to seek an evaluation from Catholic Charities within sixty days. The order further provided that Barker had to .register as a sex offender.
On December 29,2006, the State filed an application for probation revocation based on Barker’s use of a public library computer. Barker was arrested and jailed. However,, on January 23, 2007, the district court denied the application and ordered Barker released, reasoning that there was no specific prohibition on his use of a computer, so long as it did not involve use of the internet or chat rooms.
On February 5, 2007, Barker' received a five-year suspended sentence on the Clay County theft charge, to run' concurrently with his sentence for solicitation of a minor. Barker was placed on probation for that charge as well.
On occasions ,in April, May, July, and September, Barker was noncompliant with the treatment- services at Catholic Chari-, ties. He was discharged from that program. After a home visit revealed that Barker was engaged in internet use and had images of young males on his computer, his computer was seized and in December the district court ordered Barker into the RTF once space became available.
In March 2008, Barker was < admitted to the RTF. Barker lost several jobs during this time period because of unauthorized internet use, including the access of pornography. On July 31, Barker was unsuccessfully terminated from the RTF, and the State filed another application for revocation of his probation. Barker was jailed again at this time.
On October 30, the district court revoked Barker’s probation on the solicitation of a minor charge and sentenced him *160 to imprisonment for a term not to exceed five years with credit for time served. Barker was transferred to the ■ Mount •Pleasant Correctional Facility.
On November 14, 2008, a probation revocation proceeding was commenced in Clay County on Barker’s theft conviction, This proceeding was dismissed on March 2, 2009, due to the fact that Barker, was already in prison .based on the conviction for solicitation of a minor. • •
On October 1, Barker filed an application for postconviction; relief from his conviction for solicitation of a minor. His application alleged that his prior counsel had committed ineffective assistance of counsel because there was no factual basis for his guilty plea to solicitation of a minor to engage in a sex act. In a written ruling, the district court granted the application on February 28,2011. The court reasoned that to commit the offense, Barker had to have solicited someone else to commit an actual crime, and he had not done so. The court explained, “If such [sex] act occurred, the adult would be committing the crime and the child would be a victim. Thus, the adult cannot be considered to have asked the fourteen or fifteen year old to commit a felony crime.” The court then concluded,
By advising and permitting Barker to plead guilty to a crime for which he could not give a factual basis, defendant’s counsel failed to perform an essential duty and the prejudice to defendant was inherent in the conviction entered upon his defective plea.
The court vacated Barker’s conviction and sentence.
Barker never appealed or sought post-conviction relief from his second-degree theft conviction in Clay County. Also, Barker does not dispute that his conduct in Palo Alto County amounted to attempted ’ énticement of a child in violation of Iowa Code section 710.10(3), the first count charged in the original trial information.
On March 1, 2013, Barker filed a petition alleging that Magee and Capotosto committed, legal- malpractice by advising him to plead guilty to an offense for which there was no factual basis. ..Thereafter, Capotosto filed a motion for summary judgment, which Magee joined. They argued ' Barker could not establish that he was factually innocent in the underlying criminal case. "’ They urged that the Iowa courts should require a plaintiff to prove actual innocence in order to maintain a suit for legal malpractice occurring in the course of criminal representation. They also argued that, as a matter of law, them alleged malpractice did not cause Barker’s damages.
The district court granted the motion on the first ground, stating,
[T]he Court finds actual innocence must be established in a criminal malpractice action. Additionally, the Court finds actual innocence requires innocence of all transactionally related offenses. Plaintiff does not dispute that he attempted to entice a person whom he believed to be under the age of 16 with the intent to commit an illegal act. Plaintiff admits that what he did do was ’engage in a telephone conversation with a person he believed to be fifteen years old for the purpose of arranging a meeting leading to a sexual encounter' and that -this meets the definition of attempted enticement of a minor for an illegal act, an aggravated misdemeanor, under Iowa Code Section 710.10(3) (2005), which was charged in the under[ly]ing criminal ease FECR04088. Plaintiff is unable to establish actual innocence of all transac-tionally related offenses. Therefore, the Court finds summary judgment in favor of Defendants is appropriate.
*161 Barker , appealed, and we retained the appeal.
II. Standard of Review.
We review grants of summary judgment for correction of errors at law. Vossoughi v. Polaschek, 859 N.W.2d 643, 649 (Iowa 2015). “Summary judgment is appropriate when there is no genuine issue of material fact and the moving party .is entitled to judgment as a matter of. law.” Amish Connection, Inc. v. State Farm Fire & Cas. Co., 861 N.W.2d 230, 235 (Iowa 2015). We view the facts in the light most favorable to the nonmoving party. Veatch v. City of Waverly, 858 N.W.2d 1, 6 (Iowa 2015).
III. Analysis.
A party seeking to establish a prima facie claim of legal malpractice must show the following: (1) a duty arising from the established existence of an attorney-client ' relationship; (2) the attorney breached that duty; (3) the attorney’s breach was the proximate cause of injury to the client; and (4) the client suffered actual damage, injury, or loss. Ruden v. Jenk, 543 N.W.2d 605, 610 (Iowa 1996). Additionally, we have held that a criminal defendant must “achieve relief from a conviction before advancing a legal malpractice action against his former attorney.” Trobaugh, 668 N.W.2d at 583.
In Trobaugh, we noted that some courts had also required proof of actual innocence before allowing recovery but declined to reach the issue. Id. at n, 4. We explained,
Both the procedural posture of this appeal and the absence of arguments by the parties on the issue lead us to avoid ■the question of what role, if. any, the plaintiffs guilt or innocence plays in advancing a claim for legal malpractice.

Id.

Barker’s case squarely presents the issue reserved in TroboMgh — whether proof of actual innocence is required in a “criminal malpractice” suit.[2] We are not the first court to confront this question. Other jurisdictions have addressed whether to require actual innocence in a criminal malpractice action. We consider three of the approaches taken elsewhere and their supporting reasoning.
Of those jurisdictions to have considered the issue, a majority have adopted an “actual innocence” requirement. See Wiley v. County of San Diego, 19 Cal.4th 532, 79 Cal.Rptr.2d 672, 966 P.2d 983, 985, 991 (1998) (holding that actual innocence is a required element of a plaintiffs cause of action in a criminal malpractice action); Schreiber v. Rowe, 814 So.2d 396, 399 (Fla.2002) (per curiam) (same); Glenn v. Aiken, 409 Mass. 699, 569 N.E.2d 783, 786 (1991) (same); Rodriguez v. Nielsen, 259 Neb. 264, 609 N.W.2d 368, 374 (2000) (same); Morgano v. Smith, 110 Nev. 1025, 879 P.2d 735, 738 (1994) (holding that “in order to prevail at trial, the [criminal malpractice] plaintiff must prove actual innocence of the underlying charge”); Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A., 143 N.H. 491, 727 A.2d 996, 998-99 (1999) (holding that only clients ablé to prove actual innocence can challenge decisions made by defense counsel through malpractice actions); Carmel v. Lunney, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126, 1128 (1987) (holding that a criminal malpractice plaintiff “must allege ... inno *162 cence or a colorable claim of innocence” to state a cause of action); Bailey v. Tucker, 533 Pa. 237, 621 A.2d 108, 113 (1993) (“[D]efendant must prove, by a preponderance of the evidence, that he did not commit any unlawful acts with which he was charged as well as any lesser .offenses included therein [to maintain criminal malpractice suit].”); Ang v. Martin, 154 Wash.2d 477, 114 P.3d 637, 642 (2005) (requiring criminal malpractice plaintiffs to prove actual innocence by a preponderance of the evidence to state a cause of action); Humphries v. Detch, 227 W.Va. 627, 712 S.E.2d 795, 801 (2011) (same); see also Lamb v. Manweiler, 129 Idaho 269, 923 P.2d 976, 979 (1996) (noting that plaintiff did not dispute that in a criminal malpractice action the plaintiff “must establish the additional element of actual innocence of the underlying criminal charges”); Adkins v. Dixon, 253 Va. 275, 482 S.E.2d 797, 802 (1997) (holding that actual guilt is a material consideration on issue of proximate cause).[3]
The Ang case from Washington exemplifies the reasoning of those courts that have adopted an actual, innocence requirement. The Angs, a married couple who owned a medical examination company, became the target of a social security fraud investigation. Ang, 114 P,3d at 639. They were eventually indicted on eighteen criminal counts, including bank and tax fraud. Id, Their counsel attempted to negotiate a plea bargain, but the Angs rejected the proposed agreement. Id. The case went to trial, but just before the close of the prosecution’s case, the Angs’ attorneys recommended they accept a plea — one the Angs considered less attractive than previous offers. Id. The Angs agreed to plead guilty to two counts but allegedly only after Dr. Ang was told that his wife might be sexually assaulted in prison. Id.
Upon retaining new counsel, the Angs successfully moved tt> withdraw their pleas. Id. The case went to trial again, and the Angs were acquitted of all eighteen counts. Id. The Angs then filed a legal malpractice action against their original attorneys. Id. The jury in the malpractice action was' instructed that the Angs had to prove they were innocent of the underlying criminal charges by a preponderance of the evidence. Id. The Angs lost their malpractice case and assigned error to the instruction on appeal. Id. at 641.
The Washington Supreme .Court upheld the instruction, deciding that actual innocence — as well as relief from the underlying criminal charges — was a necessary component of a plaintiffs suit for criminal malpractice. Id. at 643. The court noted the Angs may have been legally innocent, as evidenced by the successful withdrawal of their guilty pleas and their subsequent acquittal of all charges, but that did not necessarily mean they were actually innocent of the criminal conduct they had been accused of in the prior proceedings. Id. at 641. In the court’s view, actual innocence was “essential” to proving causation, both proximate and but-for causation. Id. at 642. Additionally, the court found that requiring criminal malpractice plaintiffs to prove them actual innocence
*163 will prohibit criminals from benefiting from their own bad acts, maintain respect for our criminal justice systems procedural protections, remove the harmful chilling effect on the defense bar, ^prevent suits from criminals who may be guilty, [but] could have gotten a better deal, and prevent a flood of nui-sanee litigation.
Id. (quoting Falkner v. Foshaug, 108 Wash.App. 113, 29 P.3d 771, 776 (2001) (footnote omitted)).
As Ang illustrates, courts adopting the actual innocence element in criminal malpractice actions have been motivated by public policy concerns. Principal among these concerns is that “it would violate public policy to allow a person to profit from participating in an illegal act.” Humphries, 712 S.E.2d at 800; see Wiley, 79 Cal.Rptr.2d 672, 966 P.2d at 983 (“[P]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud,- or to take advantage of his own- wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime.” (quoting Peeler v. Hughes & Luce, 909 S.W.2d 494, 497 (Tex.1995))).
Another' rationale is that actual innocence prevents the former criminal defendant from shifting the responsibility for his or her conviction. Wiley, 79 Cal.Rptr.2d 672, 966 P.2d at 986. If a plaintiff committed the crimes he or she was accused of, then- he or she “alone should bear full responsibility for the consequences of [his or her] acts, .including imprisonment. Any subsequent negligent conduct by a plaintiffs attorney is superseded by the greater culpability of the plaintiffs criminal conduct.” Id. (quoting Shaw v. State, 861 P.2d 566, 572 (Alaska 1993)).
Also,- courts have found that constitutional protections, such as postconviction relief-for ineffectiveness of counsel, provide a sufficient remedy for guilty defendants. Id. 79 Cal.Rptr.2d 672, 966 P.2dat 988-89; see Bailey, 621 A.2d at 113 (“If- a person- is convicted of a crime because of the inadequacy of counsel’s representation, justice is satisfied by the grant of a new-trial— [but] if an innocent person-is wrongfully convicted due to the attorney’s dereliction, justice requires that he be compensated for the -wrong which has occurred.”). . Moreover, courts have noted a substantial interest in preserving the availability of representation to criminal defendants. Mahoney, 727 A.2d at 999. Criminal defense counsel is often working for reduced fees or has been appointed at public expense, and “[t]he public has a strong interest in encouraging the representation . of criminal -defendants, particularly those who are ruled to be indigent.” Schreiber, 814 So.2d at 399 (quoting Glenn, 569 N.E.2d at 788). In declining to require criminal malpractice plaintiffs to prove actual innocence, courts -might be “[s]etting the standard at a lower level [which] may well dampen counsels’ willingness to enter the criminal defense arena.” Mahoney, 727 A.2d at 1000. And further, the differing burdens of -proof in criminal and malpractice actions could create confusion for the jury. Wiley, 79 Cal.Rptr.2d 672, 966 P.2d at 990.
Additionally, these courts commonly focus on the causation element of a malpractice case in their reasoning. Many of them have asserted in some form that the plaintiffs criminal behavior — rather than the attorney’s conduct — led to the -plaintiffs predicament. See, e.g., Rodriguez, 609 N.W.2d at 374 (“We believe that it is the illegal conduct of a convicted criminal who files a malpractice claim, rather than any subsequent negligence of counsel, that is the cause in fact of any injuries flowing from the conviction.”).- Judge Posner per *164 haps best voiced this consideration in Levine v. Kling, a case in which the United States Court of Appeals' for the Seventh Circuit determined that Illinois law required a. criminal malpractice plaintiff to establish innocence, either by postconviction relief or other means, See 123 F.3d 580, 582 (7th Cir.1997).
On [the plaintiffs] view there would be cases in which a defendant guilty in fact of the crime with which he had-been charged, and duly convicted and imprisoned (perhaps after a retrial in which he was represented by competent counsel), would nevertheless obtain ■ substantial damages to compensate him for-the loss of his liberty-during the period of his rightful imprisonment.
Not only would this be a paradoxical result, depreciating and in some cases wholly offsetting the plaintiffs criminal punishment, but it would be contrary to fundamental principles of both tort and criminal law. Tort law provides damages only for harms to the plaintiffs legally protected interests, Restatement (Second) of Torts, § 1 comment d, § 7(1) (1965), and the liberty of a guilty criminal is not one -of them. The guilty crimi■nal maybe ablé'-to obtain an acquittal if he" is -skillfully represented, but he has no right to that -result .,, and the law provides no relief if the “right” is denied him.

Id.

Alaska has adopted a somewhat different approach. Instead of. requiring the former criminal defendant to establish actual .innocence, this approach allows the criminal defense attorney to raise, actual guilt as an affirmative defense to the malpractice suit. See Shaw, 861 P.2d at 572. The attorney must prove her or his former client's guilt by a preponderance of the evidence,, but in doing so,.the attorney is not limited to the evidence admissible on the criminal charge. Id. at 573. In placing this burden on the defendant, the Alaska Supreme Court noted the plaintiff still must obtain postconviction relief before bringing the malpractice claim. Id. at 572. The court also cited the similarity between an actual guilt defense and other affirmative defenses in tort such as comparative negligence and assumption of the risk. Id. at 572 n. 9.
As a third alternative, some courts, have rejected an actual innocence requirement entirely.' See Godby v. Whitehead, 837 N.E.2d 146, 151 (Ind.Ct.App.2005) (reiterating the court’s point from a prior.case that “a criminal defendant does not have to prove his innocence before he files a legal malpractice claim”); Mashaney v. Bd. of Indigents’ Def. Servs., 302 Kan. 625, 355 P.3d 667, 687 (2015) (rejecting the actual innocence rule in a jurisdiction that-requires postconviction relief prior to filing a criminal malpractice suit); see.-also Mylar v. Wilkinson, 435 So.2d 1237, 1239 .(Ala. 1983), modified in part on other grounds by Morrison v. Franklin, 655 So,2d 964, 966 (Ala.1995) (noting that “the validity of [the defendant’s] claim' for relief in his criminal prosecution is not necessarily conclusive on his claim for civil damages”); Rantz v. Kaufman, 109 P.3d 132, 136 (Colo.2005) (refusing to adopt the “exoneration rule,” which would require criminal malpractice .plaintiffs to, obtain postconviction relief prior to filing suit); Jepson v. Stubbs, 555 S.W.2d 307, 313 (Mo.1977) (concluding that the setting aside of a judgment of conviction is not a condition to maintaining a suit for malpractice arising from criminal representation); Krahn v. Kinney, 43 Ohio St.3d 103, 538 N.E.2d 1058, 1061 (1989) (holding that the elements of proof for legal malpractice remain the same whether the action arises from civil or criminal representation).
*165 The Kansas Supreme Court recently-considered, and declined to adopt, an actual innocence requirement. See Mashaney, 355 P.3d at 687. The case involved an individual charged with one count of aggravated criminal sodomy and one count of aggravated indecent liberties with a child. Id. at 670. After the first final ended in a mistrial, the individual was convicted in a second jury trial and sentenced to 442 months in prison. Id. at 670-71. Years later, Mashaney successfully moved to vacate or set, aside his sentence, and his case was set for a new trial. Id. at 671. At that point, the defendant agreed to enter an Alford plea to two counts of attempted aggravated battery and one count of aggravated endangerment of a child in return for the State dropping the original charges. Id. The court sentenced Masha-ney to seventy-two months in prison, and he was released for time served. Id.
Mashaney subsequently filed a malpractice suit against his former trial counsel, his former appellate counsel, and the state board of indigent defense services. Id. He sought damages for the nearly eight years he spent in prison. Id. The court dismissed Mashaney’s claim against the-state board and granted judgment On the pleadings to the attorneys. Id. On appeal, the Kansas Court of Appeals held that a plaintiff as a threshold matter must prove actual innocence to pursue a criminal malpractice action. Id. at 672.
The Kansas Supreme Court reversed. Id. at 687. First, the court disagreed with the broad notion that public policy supports the actual innocence rule. See id. at 678. It indicated that the justifications for the rule were too simplistic and “no match for the complexities of a case such as this.” Id. at 678, 687. Next, the court stated that requiring actual innocence produced inequitable results in that former defendants who received “lengthy prison sentences as a,direct, result of their lawyers’ negligence will be deprived of any tort remedy for that malpractice and some lawyers representing criminal defendants will escape liability when their ciyil counterparts would not.” Id. at 679, 687. The court added that actual innocence was based on a flawed conception of causation in tort law because if counsel “fails to demonstrate the State’s inability to prove guilt beyond a reasonable doubt when a competent lawyer could have and would have done, so, the client has been legally injured by being convicted and imprisoned,” regardless of innocence. Id. at 684, 687. Moreover, the court .found the notion that actual, innocence furthers the availability of criminal defense representation supported by judicial speculation rather than empirical evidence. Id. at 685, 687.
Lastly, the Kansas Supreme Court noted that in a prior decision, it. had adopted the “exoneration rule,” under which the criminal malpractice plaintiff had to obtain relief from her or his conviction before bringing any claim. Id. at 673-74 (discussing Canaan v. Bartee, 276 Kan. 116, 72 P.3d 911 ,(2003)). It indicated that this requirement effectively precluded the bringing of frivolous malpractice claims by criminal defendants. Id. at 685.,
■ This recent Kansas decision mirrors the recommendation of the Restatement of the Law Governing Lawyers. Regarding actions- for malpractice by a criminal defendant; the Restatement concludes that “it is not necessary to prove that the convicted defendant was in fact innocent,” although it notes that “most jurisdictions addressing the issue .have* stricter rules.” Restatement- (Third) of.the Law Governing.Lawyers § 53. cmt. d, at 392 (Am. Law Inst. 2000) [hereinafter Restatement], The Restatement adds,
As required by most jurisdictions addressing the issue, a convicted defendant *166 seeking damages for malpractice causing a conviction must have had that' conviction set aside when process for that relief on the grounds asserted in the malpractice action is available.
Id. Thus, this aspect of the Restatement is consistent with our holding in Trobaugh. See 668 N.W.2d at 583.
We often look to the Restatements for guidance. See Rohlin Constr. Co. v. City of Hinton, 476 N.W.2d 78, 80 (Iowa 1991) (“We often turn to Restatements of the Law_”). We have previously relied on the Restatement of the Law Governing Lawyers when defining the scope of the duty of care attorneys owe their clients. See Sabin v. Ackerman, 846 N.W.2d 835, 842 (Iowa 2014).
We find the approach taken by the Restatement and like-minded jurisdictions to be persuasive. The prerequisite that the malpractice plaintiff obtain judicial relief from her or his conviction, which the Restatement endorses and which we adopted in Trobaugh after “considering all of the issues presented and the wealth of commentary on this issue,” serves as an important screen against unwarranted claims and “preserves key principles of judicial economy and comity.” 668 N.W.2d at 583. But we do not think an additional actual innocence screen is appropriate. Such a prerequisite goes beyond respecting the criminal process — i.e., “judicial economy and comity” — and interposes an additional barrier to recovery that other malpractice plaintiffs do not have to overcome.
Furthermore, a criminal defendant already “must prove both that the lawyer failed to act properly and that, but for that failure, the result would have been different.” Restatement § 53 cmt. d, at 392; see also Vossoughi, 859 N.W.2d at 649 (noting that to establish a prima facie claim of legal malpractice, the plaintiff must produce evidence showing the attorney’s breach of duty caused actual injury). Often, the innocence or guilt of the client will enter into the causation inquiry that is part of the plaintiffs prima facie case. See Mashaney, 355 P.3d at 688 (Stegall, J., concurring). For example, if Barker’s counsel had refused to let him plead guilty to the nonexistent crime of soliciting a minor to commit a sex act, would the State have pursued the original charges, assuming it could have done so? What would have been the outcome of those charges? Would Barker have been incarcerated anyway? A criminal defendant who was factually guilty of the crime for which he or she was convicted — or at least guilty of a related crime or a crime with which he or she was originally charged — will likely confront significant causation issues in his legal malpractice action. We see no reason why such issues cannot be resolved, as they generally are in malpractice actions, by the fact finder.
Thus, we think the causation determination will frequently take into account the guilt or innocence of the client. And ultimately, we are not persuaded by the remaining public policy concerns other than causation. For example, while the notion that an individual should not “profit from participating in an illegal act” is a good general principle, Humphries, 712 S.E.2d at 800, it is too general to describe how our legal system actually operates. We do hot bar criminal defendants who are guüty of their crimes from recovering overpay-ments from their criminal defense counsel, suing for clearly illegal searches, or suing the medical staff in- the prison for medical malpractice. By analogy, a criminal defendant who is convicted of a crime due to legal malpractice, and gets that conviction set aside; should not be categorically barred from suing his or her former attorney just because the defendant may have *167 been guilty of some - lesser charge that would have resulted in a lower sentence.
Likewise, our legal malpractice'precedents have'not adopted the principle that “subsequent negligent conduct” by the attorney can be compared to the “culpability” of the client that required him to need legal services in the first place. See Wiley, 79 Cal.Rptr.2d 672, 966 P.2d at 986; of. Restatement (Third) § 64 cmt. d, at 404 (discussing the scope of comparative negligence in the context of legal malpractice and noting that “clients are entitled to rely on their lawyers to act with competence, diligence, honesty, and loyalty”).
Additionally, while we wholeheartedly agree that “[t]he public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent,” Glenn, 569 N.E.2d at 788, it also has ,an interest in encouraging competent representation. Attorneys who serve indigent persons in other contexts, such as legal aid attorneys, are not exempt from potential malpractice claims.
Finally, we- are not persuaded that an actual innocence requirement is needed to prevent a proliferation of nuisance suits. A criminal malpractice plaintiff .still must obtain relief from the conviction. See Trobaugh, 668 N.W.2d at 583; see also Wiley, 79 Cal.Rptr.2d 672, 966 P.2d at 994 (Mosk, J., dissenting) (asserting that the postcon-vietion relief requirement “will screen out frivolous malpractice claims” obviating the need for an actual innocence requirement). And unless the plaintiffs claim is based on standards of care and professionalism understood and expected by laypersons, the plaintiff will have to retain an expert to go forward. See Wilson v. Vanden Berg, 687 N.W.2d 575, 583 (Iowa 2004). Furthermore, attorneys will still be able to avail themselves of traditional malpractice defenses. See Cort Thomas, Note, Criminal Malpractice: Avoiding the Chutes and Using the Ladders, 37 Am. J. Crim. L. 331, 342 (2010) (outlining available defenses for defendant attorneys in criminal malpractice actions).
Barker’s former attorneys' emphasize that persons suing the State under chapter 663A for wrongful imprisonment are required to prove actual innocence. See Iowa Code § 663A.1(2) (requiring proof of actual innocence by' clear and convincing evidence); State v. DeSimone, 839 N.W.2d 660, 665 (Iowa 2013); State v. McCoy, 742 N.W.2d 593, 599 (Iowa 2007). However, the two types of actions serve different purposes. . The wrongful-imprisonment statute is a limited exception to sovereign immunity - intended to provide some compensation regardless of fault to “innocent persons who have been wrongfully convicted and imprisoned.” McCoy, 742 N.W.2d at 596. A legal malpractice claim is designed to compensate the client for her or his attorney’s breach of cluty. See Sladek v. K Mart Corp., 493 N.W.2d 838, 840 (Iowa 1992) (“The goal in legal malpractice is to put clients in the position they would have occupied had the attorney not been negligent.”).
To the extent statutes are relevant, we believe Iowa Code section 815.10(6) has more bearing on the present case than chapter 663A. Section 815.10(6), which governs appointed counsel, provides,
An attorney appointed under this section is not liable to a person represented by the attorney for damages as a result of a conviction in a criminal case unless the court determines in a postconviction proceeding or on direct appeal that the person’s conviction resulted from ineffective assistance of counsel, and the ineffective assistance of counsel is the proximate cause of the damage.
*168 Thus, the legislature has established immunity for appointed counsel unless a postconviction court determines that the client’s “conviction resulted from ineffective assistance of counsel.” This is similar to the “relief from a conviction” prerequisite that we recognized under the common law in TrobaUgh. . See 668 N.W.2d at 583. Section 815,10(6) does not contain an actual innocence requirement, though. In short, Barker’s former attorneys ask us to impose an actual innocence requirement as a matter of common law that the legislature has declined to provide for appointed counsel as a matter of statutory law.
Hence, for the reasons stated, we conclude that a client’s 'showing of actual innocence is not a prerequisite to bringing a legal malpractice -claim against a former criminal defense attorney.
IV. Conclusion.
For the foregoing reasons, we reverse the summary judgment of the district court and rómand for further proceedings consistent with this opinion.[4]
REVERSED AND REMANDED,
All justices concur except ZAGER and WATERMAN, JJ., who dissent.

. The amended count sought to charge an inchoate crime (Iowa has no general attempt statute) by combining Iowa Code section 705. l’s general prohibition on soliciting other persons to commit crimes with section 709.4(2)(c )(4)’s prohibition on performing a sex act with a person who is fourteen or fifteen years of age when the person committing the act is four or more years older. The problem with this effort, as became apparent years later, is that Barker wasn’t soliciting someone else to commit the crime of sexual abuse; he was attempting to commit that crime himself.

. The term "criminal malpractice” has been used to describe a legal malpractice action brought by a former criminal defendant against his dr her former criminal defense attorney. See, e.g., Otto M. Kaus & Ronald E, Mallen, The Misguiding Hand of Counsel— Reflections on "Criminal Malpractice," 21 U.C.L.A. L. Rev. 1191, 1191 n. 2 (1974) (defining the phrase).

. Some courts have conflated the granting of postconviction relief with innocence. See, e.g., Peeler v. Hughes & Luce, 909 S.W,2d 494, 497-98 (Tex.1995), In doing so, they 'have not distinguished between what the Washington Supreme Court termed legal innocence— a grant of postconviction relief — and actual innocence, a matter of factual proof. See Ang, 114 P.3d at 642. Because Barker has already received postconviction relief, and the original charges have not been pursued, only his actual, as opposed to legal, innocence is at issue here.

. Capotosto and Magee’s summary judgment ■ motion argued as an alternative ground that Barker could not establish causation, as a .matter of law. The district court did not reach this issue, granting summary judgment only on the basis of Barker's inability to establish his actual innocence. ■ On appeal, Ma-gee argues this alternative ground only briefly, and Capotosto does not argue it at all. In light of the fact that the district court did not reach this issue, we believe it would be prudent for us not to reach it as well. We leave it open for the parties to brief and for the district court to consider* on remand.