# IN THE COURT OF APPEALS OF IOWA

No. 16-1392
Filed September 13, 2017


**RAY J. KRAKLIO,**
　　　　Plaintiff-Appellant,

**vs.**

**KENT SIMMONS,**
　　　　Defendant-Appellee.

_____


　　　　Appeal from the Iowa District Court for Scott County, J. Hobart Darbyshire,

Judge.


　　　　Ray Kraklio appeals the court's summary dismissal of his malpractice

claim against a criminal defense attorney. **REVERSED AND REMANDED.**



　　　　Curtis R. Dial of the Law Office of Curtis Dial, Keokuk, for appellant.

　　　　Kent A. Simmons, Bettendorf, pro se.



　　　　Considered by Vaitheswaran, P.J., Mullins, J., and Blane, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MULLINS, Judge.**

In 2014, Ray Kraklio sued one of his criminal defense attorneys, Kent Simmons, alleging Simmons was liable for malpractice; specifically, Simmons "took no steps to see that [Kraklio] was discharged from probation." The district court granted summary relief to Simmons, citing *Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016) (requiring defendant to achieve relief from a conviction before advancing a legal malpractice action against former attorney). Kraklio appeals, and we begin by setting out the underlying court proceedings.

In November 2002, Kraklio was charged by trial information with three class "C" felony counts of first-degree fraudulent practice—counts 4, 5, and 6.[1] *State v. Kraklio*, No. 03-0813, 2005 WL 156803, at *1 (Iowa Ct. App. Jan. 26, 2005). Kraklio agreed to plead guilty to all three counts and pay restitution, and the State agreed to recommend probation. *Id.* at *2. The court sentenced Kraklio on April 17, 2003, to concurrent terms of not more than ten years, suspended the sentences, and placed him "on five years [of] probation on each of the three counts." *Id.* The court also ordered restitution for each count. *Id.*

Kraklio met with his probation officer. According to Kraklio, the officer "told me that if I filed a Notice of Appeal, he would not supervise me while my case was on appeal." On May 16, 2003, Kraklio filed a pro se notice of appeal.

In June 2003, Simmons was appointed to represent Kraklio. During the direct appeal, Simmons secured a limited remand for discovery regarding "a defense based on the statute of limitations." *Id.* After discovery, Kraklio asserted

---

[1] The first three counts of the trial information were charges against Kraklio's wife, also for welfare fraud.

trial counsel was ineffective by not arguing the State's trial information was filed outside the statutes of limitations. *Id.* at *3. In January 2005, this court concluded Kraklio's trial counsel "breached an essential duty" by not determining "the possible viability of a statute of limitations defense." *Id.* at *6. Turning to the prejudice prong, we found the record inadequate to resolve the ineffectiveness challenges to counts 4 and 5 and preserved those for possible postconviction proceedings. *Id.* at *8. But because the record showed Kraklio was not prejudiced by any breach of duty by trial counsel on count 6, we rejected his ineffectiveness claim for count 6. *Id.* Thus, his convictions on all counts were affirmed. Procedendo issued on April 25, 2005.

In August 2005, Kraklio's probation officer resumed supervision and asked Kraklio to sign a restitution plan. Kraklio would not sign, which led to the filing of a report of probation violation in December 2005. Simmons defended Kraklio, and in February 2006, Kraklio signed a restitution plan. He agreed to pay $12,000 annually until he paid over $139,000 in restitution.

Kraklio hired Simmons to represent him in a postconviction-relief (PCR) action, which Simmons filed in May 2006. In 2008, rulings were issued in both a new revocation action and the ongoing PCR action. Because Kraklio did not follow the restitution plan, a report of probation violation was filed. Kraklio applied for and was appointed counsel—not Simmons. After a hearing, the court revoked Kraklio's probation on January 31, 2008, ordering him to prison. Two months later, on April 3, 2008, the PCR court granted Simmons's motion for summary judgment and ordered Kraklio's convictions on counts 4 and 5 vacated

for failure to meet the relevant statutes of limitations. Based on Simmons's representation, over $80,000 in restitution was voided.

While Kraklio was still in prison as a result of his revoked probation, Simmons prepared and successfully litigated a motion to reconsider sentence—on March 24, 2009, the court reconsidered the prison sentence, again suspended it, and ordered Kraklio's supervised probation to resume. The court instructed Kraklio to immediately contact his probation officer, stating "supervision shall continue as originally ordered herein."

Kraklio resumed supervised probation and did not challenge the probation. He again refused to pay restitution, and in December 2009, a report of violation was filed. Another attorney, not Simmons, was appointed to represent Kraklio, and a revocation hearing was held on February 4, 2010. Kraklio's original probation officer had retired. On cross-examination by Kraklio's attorney, his new probation officer testified Kraklio's original probation started in April 2003. At the conclusion of evidence and without arguments by counsel, the district court immediately ruled on the record that Kraklio's "maximum period of probation for the remaining offense for which he's been convicted [(count 6)] has expired. Therefore, [Kraklio] will be discharged unsuccessfully from probation."

In October 2014, Kraklio sued Simmons, claiming Simmons was negligent "in failing to ensure [Kraklio] was discharged from probation," which allegedly should have discharged on April 17, 2008.[2] *See* Iowa Code § 907.7(1) (2003).

---

[2] In the malpractice litigation, Simmons claimed he did not represent Kraklio in the underlying criminal case after the March 2009 hearing. Disputing the revocation court's conclusions, Simmons also asserts: "The ruling that the probation had expired was incorrect, but the State did not object. It appears [the court] was unaware the term of

To establish a prima facie claim of legal malpractice, Kraklio "must 'achieve relief from a conviction before advancing a legal malpractice action against his former attorney.'" *Barker*, 875 N.W.2d at 161 (quoting *Trobaugh v. Sondag*, 668 N.W.2d 577, 583 (Iowa 2003) ("[T]he approach [requiring] a defendant to achieve relief . . . before advancing a legal malpractice action against his former attorney . . . best preserves key principles of judicial economy and comity, including the avoidance of multiple proceedings related to the same factual and procedural issues, [and] respect for other statutorily created processes such as postconviction relief . . . .")).

Simmons sought summary judgment, citing *Barker*, which declined "to adopt proof of actual innocence as a separate prerequisite to recovery for legal malpractice."[3] *Id.* at 158, 167 ("[W]e are not persuaded that an actual innocence requirement is needed to prevent a proliferation of nuisance suits. A criminal malpractice plaintiff still must obtain relief from the conviction.").

Kraklio resisted summary judgment, and arguments were advanced in an unreported hearing. The court framed the issue: "[W]hether Kraklio has achieved

---

probation had been suspended while the case was on direct appeal." Because the district court's ruling on summary judgment did not specifically address those claims by Simmons, we decline to address them in the first instance.

[3] The *Barker* court also stated, "[T]he legislature has established immunity for appointed counsel unless a postconviction court determines that the client's 'conviction resulted from ineffective assistance of counsel.' This is similar to the 'relief from a conviction' prerequisite that we recognized under the common law in *Trobaugh*." 875 N.W.2d at 167 (citing *Trobaugh*, 668 N.W.2d at 583). In support, *Barker* quoted Iowa Code section 815.10(6), which provides a court-appointed attorney

> is not liable to a person represented by the attorney for damages as a result of a conviction in a criminal case unless the court determines in a postconviction proceeding or on direct appeal that the person's conviction resulted from ineffective assistance of counsel, and the ineffective assistance of counsel is the proximate cause of the damage.

*Id.*

relief from his underlying convictions to advance a legal malpractice action against Simmons." Noting the irony of the fact "the only relief achieved on Mr. Kraklio's behalf in this case was achieved by Simmons," the court cited *Barker*, granted summary judgment to Simmons, and concluded:

> Kraklio stayed on probation after counts 4 and 5 were vacated because count 6 was affirmed by the court of appeals and never vacated postconviction. Kraklio never achieved relief from count 6, which was the cause of his probation, which [also] was the basis for his claims against Simmons. As such, because Kraklio has never achieved relief from his conviction as to count 6, he cannot advance a legal malpractice claim against Simmons.

We review Kraklio's appeal for correction of errors at law and view the facts in the light most favorable to Kraklio. *See id.* at 161.

On appeal, Kraklio "is not claiming that he did not commit the crimes." Rather, he claims the district court "erred in requiring [him to] show that he had achieved relief from his conviction before advancing his legal malpractice claim." He asserts *Barker* and *Trobaugh* are factually distinguishable because those cases dealt with claims "against attorneys who had represented [the defendants] on criminal cases and [the defendants] claimed that the attorneys did not properly represent them on criminal cases."

In reaching its decision, *Barker* cited approvingly to the analysis of the Kansas Supreme Court in *Mashaney v. Board of Indigents' Defense Services*, 355 P.3d 667, 687 (Kan. 2015). We have no Iowa cases considering this question, but the Kansas Supreme Court has discussed the "prior relief" requirement in a sentencing context. *See Garcia v. Ball*, 363 P.3d 399, 408 (Kan. 2015). In *Garcia*, the court ruled the defendant "was required to obtain

post-sentencing relief from the unlawful sentence" before pursuing his claim of legal malpractice. *Id.* (allowing defendant to bring malpractice suit against attorney who had represented him in probation revocation because defendant met the "prior relief" requirement by filing a pro se motion to correct illegal sentence, resulting in the court setting aside an "illegal post-release supervision term").

In this case, as a result of the facts developed by Kraklio's attorney at the 2010 probation revocation hearing, the court granted Kraklio relief from probation, declaring he was discharged from the expired probation. That relief was granted prior to Kraklio filing this malpractice action. Although Kraklio did not initiate the proceedings in which he obtained his relief—i.e., the probation revocation proceedings—the factual record developed at the hearing by his counsel quite clearly resulted in the court's ruling finding his probation had expired. Consequently, we determine Kraklio obtained relief prior to filing his malpractice action.

We must now address a question not yet addressed by an Iowa appellate court: In a lawsuit based on alleged malpractice on sentencing issues, must there be "prior relief" from the underlying conviction, or is "prior relief" from the sentencing issue that forms the basis of the lawsuit enough to allow the case to proceed? More simply: Should this court follow the reasoning of the Kansas court in *Garcia*?

The analysis of this question relates to Iowa's view of the exoneration rule and its reach and application. In *Barker*, our supreme court clarified its adoption

of a relief rule rather than an exoneration rule. 875 N.W.2d 165-67. In both *Barker* and *Trobaugh*, the court was considering the exoneration rule in the context of relief from convictions, and the court articulated the rule as requiring relief "from a conviction." *Barker*, 875 N.W.2d at 161; *Trobaugh*, 668 N.W.2d at 583. The case before us presents a scenario not previously considered by our supreme court.

We could take a literal reading of *Barker* and *Trobaugh* and say "relief from a conviction" means exactly that and apply it to this case even though the facts here do not mirror either of those cases. We note with interest, however, *Trobaugh* cited with approval the "extensive, well-reasoned policy arguments underlying the relief-required approach" of the Kansas Supreme court in *Canaan v. Bartee*, 72 P.3d 911, 916 (Kan. 2003). *See Trobaugh*, 668 N.W.2d at 583. In deciding *Barker*, the court referenced a subsequent Kansas case, *Mashaney,* 355 P.3d at 687 (citing to *Canaan's* "exoneration rule"), as a "decision [that] mirrors the recommendation of the Restatement of the Law Governing Lawyers" and found both *Mashaney* and the Restatement to be persuasive. *Barker*, 875 N.W.2d at 165-66.

Between the times the Kansas Supreme Court decided *Mashaney* and the Iowa Supreme Court decided *Barker*, the Kansas court decided *Garcia v. Ball*, 363 P.3d 399 (Kan. 2015). Garcia's claim of legal malpractice was not related to a wrongful conviction but to an illegal sentence. *Garcia*, 363 P.3d at 574. Garcia had contacted his attorney to inform him of a mistake in the application of post-release supervision, which was requiring him to remain incarcerated. After his

attorney took no action, Garcia filed a pro se motion to correct an illegal sentence. The court entered a nunc pro tunc order, resulting in Garcia's release from prison a few days later. *Id.* at 563.

The *Garcia* court explained, under these facts, Garcia was not required to prove he was actually innocent of the crimes he had committed, but Garica "was required to obtain post-sentencing relief from the unlawful sentence. That 'exoneration' occurred when the district court acknowledged that it had imposed an illegal sentence by entering a nunc pro tunc order, setting aside the illegal post-release supervision term." *Id.* at 573.

*Garcia* was decided five weeks before *Barker* and is not cited in *Barker*, but the facts and issue addressed in *Garcia* would have been of little consequence to the *Barker* court's resolution. Instead, *Garcia* applies the principles to a different claim: not malpractice resulting in a conviction but malpractice in a subsequent sentencing proceeding. If *Garcia* is a logical extension of *Mashaney*; then Kraklio's case is, similarly, a logical extension of *Barker*. On our reading of the policy considerations guiding the *Barker* decision, we determine the same policy considerations support a finding the "prior relief" requirement in this criminal legal malpractice action was satisfied when the district court in the probation-revocation proceeding declared Kraklio's probation had ended.[4]

Accordingly, we determine the district court erred in its reliance on *Barker*. We reverse the grant of summary judgment and remand for further proceedings

---

[4] Our resolution of the legal issue on appeal is not intended to suggest any particular final outcome of this case.

without prejudice for the district court to consider issues not addressed in its summary judgment ruling.[5]

**REVERSED AND REMANDED.**

Blane, Senior Judge, concurs; Vaitheswaran, Presiding Judge, dissents.

---

[5] While we have the authority to consider whether to affirm on grounds different than those on which the district court relied, generally we do so only when those grounds have been urged and briefed on appeal. *See, e.g.*, *State v. Pettijohn*, No. 14-0830, __ N.W.2d __, __, 2017 WL 2823027, at *6 (Iowa 2017) ("[W]e affirm the district court ruling that the seizure was constitutional based on an alternate ground urged by the State below and fully briefed and argued by the parties on appeal."). Alternative grounds were not urged or briefed on the appeal in this case.

**VAITHESWARAN, Presiding Judge** (dissenting).

I respectfully dissent. I agree with the majority that Kraklio was obligated to obtain relief as a predicate to going forward with his legal malpractice action. *See Trobaugh v. Sondag*, 668 N.W.2d 577, 583 (Iowa 2003) ("[W]e conclude that the approach that requires a defendant to achieve relief from a conviction before advancing a legal malpractice action against his former attorney is superior in this particular area of the law."). I also agree in principle that the "relief" a legal malpractice plaintiff suing a criminal lawyer must obtain may be something other than relief from the underlying conviction, a scenario the Iowa Supreme Court has not had reason to address.

That said, I believe the relief a legal malpractice plaintiff must obtain has to be based on the same grounds as alleged in the legal malpractice action. *See* Restatement (Third) of the Law Governing Lawyers § 53 cmt. d (Am. Law Inst. 2000) ("As required by most jurisdictions addressing the issue, a convicted defendant seeking damages for malpractice causing a conviction must have had that conviction set aside when process for that relief *on the grounds asserted in the malpractice action is available.*" (emphasis added)). That was the situation in *Garcia v. Ball*, 363 P.3d 399, 401 (Kan. 2015).

Garcia filed a legal malpractice action against his criminal attorney for failing to seek correction of a district court order that required postrelease supervision, in violation of a Kansas statute. *Garcia*, 363 P.3d at 402. The postrelease supervision order entered in his probation revocation proceeding was illegal from the moment it was entered yet, "inexplicably," nothing was

immediately done to correct it. *Id.* Eventually, Garcia filed a pro se motion to correct the illegal sentence, which was granted. In his subsequently-filed malpractice action, Garcia alleged that, but for his attorney's negligence in failing to seek correction, he would have been eligible for conditional release and would have completed his maximum sentence five months sooner. *Id.*

After discussing the exoneration rule, the Kansas Supreme Court held Garcia "was not required to prove that he was actually innocent of either the crime for which he was illegally sentenced to a postrelease supervision term or the new crime that triggered his imprisonment for violating the unlawfully imposed postrelease supervision." *Id.* at 408. Instead, the court said, "Garcia was required to obtain post-sentencing relief from the unlawful sentence." *Id.* In light of Garcia's previously-filed motion to correct the illegal sentence and the order granting it, the court concluded Garcia satisfied the exoneration rule. *Id.*

Garcia obtained the precise relief he had unsuccessfully asked his attorney to obtain. It made sense, then, that he would be allowed to proceed with his malpractice claim against the attorney. After all, the point of requiring exoneration or relief as a predicate to filing a legal malpractice claim against a criminal lawyer is to preliminarily distinguish a defendant's culpability from an attorney's negligence. *See Mashaney v. Bd. of Indigents' Def. Servs.*, 355 P.3d 667, 674 (Kan. 2015) (citing *Canaan v. Bartee*, 72 P.3d 911, 920-21 (Kan. 2003) ("[T]he adoption of the exoneration rule could be construed simply as a recognition that a plaintiff has no cause of action until he or she can establish the causation element of his or her claim. In other words, until a plaintiff has been

exonerated, his or her criminal conduct and not his or her attorney's negligence is the proximate cause of his or her incarceration.")).

In contrast, Kraklio did not obtain the precise relief that he claims he asked Simmons to obtain. In his legal malpractice action, Kraklio alleged his "probation should have discharged" on April 17, 2008, and "[f]rom April 17, 2008 through February 4, 2010 [Simmons] took no steps to see that [he] was discharged from probation." But, in the 2010 probation revocation proceeding, the district court made no finding that his probation was indeed discharged on April 17, 2008. Following the probation revocation hearing—a hearing in which Simmons was not involved—the district court simply ruled "the defendant's maximum period of probation for the remaining offense for which he has been convicted has expired. Therefore, the defendant will be discharged unsuccessfully from probation." Without a finding of a probation-expiration date, there is no way to discern whether Kraklio had a colorable malpractice claim against Simmons. *See Barker v. Capostosto*, 875 N.W.2d 157, 166 (Iowa 2016) ("The prerequisite that the malpractice plaintiff obtain judicial relief from her or his conviction, which the Restatement endorses and which we adopted in *Trobaugh* after 'considering all of the issues presented and the wealth of commentary on this issue,' serves as an important screen against unwarranted claims and 'preserves key principles of judicial economy and comity.'" (quoting *Trobaugh*, 668 N.W.2d at 583)); *Trobaugh*, 668 N.W.2d at 583 (stating the approach of requiring a legal malpractice plaintiff to obtain relief "best preserves key principles of judicial economy and comity, including the avoidance of multiple proceedings related to

the same factual and procedural issues, respect for other statutorily created processes such as postconviction relief, and the prevention of potentially wasteful practices such as requiring a plaintiff to file a legal malpractice claim which may never come to fruition due to one of a number of factors").

The district court stated Kraklio "never achieved relief from Count 6, which was the cause of his probation, which was the basis for his claims against Simmons." Whether or not Kraklio had to attack his underlying conviction on count 6 to proceed with his malpractice claim against Simmons, I believe he was required to obtain criminal relief on the grounds he alleged in his legal malpractice action—i.e. that his probation on count 6 expired on April 17, 2008. He failed to obtain this relief. Accordingly, I would conclude the district court did not err in granting summary judgment in favor of Simmons.