# IN THE SUPREME COURT OF IOWA

No. 07–1595

Filed October 9, 2009

**GLEN D. JAHN, LISA A. JAHN** and
**GLEN D. JAHN** and **LISA A. JAHN** as Guardians
and Next Friends of CASSIE L. JAHN**,**

   Plaintiffs,

vs.

**HYUNDAI MOTOR COMPANY** and **HYUNDAI
MOTOR AMERICA, Inc.,** d/b/a/ HYUNDAI MOTOR
AMERICA**,**

   Defendants.

---

Certified questions of law from the United States District Court for the Southern District of Iowa, Thomas J. Shields, Chief United States Magistrate Judge.

Federal district court certified two questions concerning a claim for enhanced injuries arising out of a products liability action. **CERTIFIED QUESTIONS ANSWERED.**

James D. Bruhn of Farwell & Bruhn, Clinton, for plaintiffs.

Richard J. Sapp, Debra L. Hulett, John T. Clendenin, and Matthew R. Eslick of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for defendants.

**APPEL**, **Justice**.

The United States District Court for the Southern District of Iowa certified two questions to this court arising out of a products liability action. The two certified questions are:

1. Will the Iowa Supreme Court adopt sections 16 and 17 of the Restatement (Third) of Torts: Products Liability governing liability for enhanced injury, specifically, including rules of joint and several liability and comparative fault of joint tortfeasors under sections 16(d) and 17, and defining burdens of proof under sections 16(b) and 16(c)?

2. Under the Iowa Comparative Fault Act, may the fault of a released party whose negligence was a proximate cause of the underlying accident and of the plaintiff's injuries be compared by the jury on plaintiff's enhanced injury claim against the product defendant?

For the reasons expressed below, we answer "yes" to all aspects of both questions and elaborate on our answers to provide guidance to the federal court.

## I. Factual Background and Procedural History.

For purposes of the certified questions presented in this case, there are no factual disputes. The accident that gave rise to this litigation occurred when a vehicle driven by Grace Burke blew through a stop sign at an intersection in Clinton, Iowa and struck an automobile operated by Glen Jahn. After impact, the front, driver-side airbag in the vehicle driven by Jahn, a Hyundai Elantra, allegedly failed to deploy. As a result of the accident, Jahn sustained multiple serious injuries including fractures of the skull, left hip, knee, right femur, right tibia, right ankle, and arch of the foot. Jahn also allegedly suffered a closed head injury.

Jahn reached a settlement with Burke and her insurance carrier prior to filing the present action against Hyundai Motor America (HMA). In the present action, the Jahns allege that the failure of the airbag in their Hyundai Elantra to deploy upon impact caused Jahn enhanced

injuries that could have been avoided absent the alleged product defect. The Jahns' products liability claim is founded on res ipsa loquitur, strict liability, and breach of warranty.

The issue presented here is whether Burke's fault may be compared by the jury when evaluating the Jahns' products liability claim against HMA. The Jahns admit that Burke is a "released party" under the Iowa Comparative Fault Act. Iowa Code §§ 668.2, .7 (2003). Further, the Jahns admit that Burke's fault was a proximate cause of the accident and a proximate cause of Jahn's injuries. They, nevertheless, assert that Burke's fault may not be compared by the jury in the products liability action against HMA.

HMA filed a motion to certify questions of law to this court seeking definitive rulings related to whether sections 16 and 17 of the Restatement (Third) of Torts: Products Liability should apply in this case and, if they do, how these provisions should apply to the facts and circumstances presented here. The Jahns joined in the motion. The district court granted the motion and certified two questions for our determination.

**II. Discussion.**

**A. Position of the Parties.** HMA and the Jahns both agree that the court should adopt sections 16 and 17 of the Restatement (Third) of Torts: Products Liability. The parties differ dramatically, however, on the proper interpretation of these provisions.

According to HMA, sections 16 and 17 of the Restatement treat products liability cases, including those involving enhanced injuries, like any other case involving multiparty defendants whose fault must be compared under Iowa's Comparative Fault Act.

On the other hand, the Jahns argue that to the extent there are injuries that would have occurred from the crash alone, the manufacturer is not liable for these harms. In contrast, if the manufacturer cannot apportion the injuries, it is liable for all of the injuries suffered by the plaintiff without application of comparative fault.

### B. Theory of Enhanced Injury Liability.[1]

1. *Background.* As late as 1966, courts rejected the notion that a product manufacturer could be liable for defective products where the negligence of another party was the cause of the underlying accident. *See generally Evans v. Gen. Motors Corp.*, 359 F.2d 822 (7th Cir. 1966), *overruled by Huff v. White Motor Corp.*, 565 F.2d 104, 110 (7th Cir. 1977). The rationale was generally that manufacturers could be held liable only for injuries resulting from intended use. *Id.* at 825. Despite the forseeability of automobile collisions, they were not considered an intended use. *Id.*

In the seminal case of *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968), the Eighth Circuit broke new ground. The court noted, "No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury . . . all are foreseeable." *Larsen*, 391 F.2d at 502. As a result, the *Larsen* court saw no reason "why the manufacturer should not be held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents." *Id.* at 503.

---

[1]The plaintiffs dispute the use of the nomenclature "enhanced injury." The phrase is simply a convenient label, however, and has no independent significance. It represents that portion of total damages for which a product manufacturer may be liable in a multiparty action involving an initial cause unrelated to a product defect.

The *Larsen* approach was further refined by the Fourth Circuit in *Dreisonstok v. Volkswagenwerk, A. G.*, 489 F.2d 1066 (4th Cir. 1974). In *Dreisonstok*, the court stated that a manufacturer's duty extended only to designing a vehicle to avoid " 'unreasonable risk of injury in the event of a collision.' " *Dreisonstok*, 489 F.2d at 1070 n.11 (quoting *Larsen*, 391 F.2d at 502). *See generally* Barry Levenstam & Daryl J. Lapp, *Plaintiff's Burden of Proving Enhanced Injury in Crashworthiness Cases: A Clash Worthy of Analysis*, 38 DePaul L. Rev. 55, 61 (1988) [hereinafter Levenstam & Lapp].

Under an enhanced injury theory, the product defect is not the cause of the initial accident. As a result, the manufacturer cannot be held liable for injuries arising out of the initial collision. The manufacturer, however, is liable for enhanced injuries over and above the injuries caused by the initial collision.

2. *Burden of proof.* A question arises regarding the plaintiff's burden of proof to sustain an enhanced injury claim. One line of cases, often named the *Huddell* approach after a leading case, holds that the plaintiff has the burden of showing that the "sole cause" of the enhanced injury was a product defect. *See Huddell v. Levin*, 537 F.2d 726 (3d Cir. 1976). According to the court in *Huddell*, a plaintiff in an enhanced injury case must prove: (1) the existence of a safer, practicable, alternative design, (2) the extent of the injuries the plaintiff would have suffered had the alternative design been used, and (3) "some method of establishing the extent of enhanced injuries attributable to the defective design." *Id.* at 737–38.

The *Huddell* approach was elaborated upon in *Caiazzo v. Volkswagenwerk A. G.*, 647 F.2d 241 (2d Cir. 1981). In *Caiazzo*, the court stressed that the plaintiff had the burden of showing not only the

fact of enhanced injury but the extent of enhanced injuries attributable to the defective design. *Caiazzo*, 647 F.2d at 250. According to *Caiazzo*, if the plaintiff cannot identify what portion of the injury occurred as a result of the design defect by a preponderance of evidence, the enhanced injury claim fails. *Id.* at 251.

The practical impact of the *Huddell* rule as applied in *Caiazzo* is that the plaintiff has the burden of apportioning the loss and loses his enhanced injury claim if he fails to offer proof of apportionment. This approach has been adopted in a number of cases. *See, e.g., Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 99 (3d Cir. 1982) (applying Pennsylvania law); *Dawson v. Chrysler Corp.*, 630 F.2d 950, 959–60 (3d Cir. 1980) (applying New Jersey law). The *Huddell* approach pulls apart and segregates the injuries and, as a result, principles of joint and several liability do not apply in an enhanced injury case.

A second line of cases imposes a less stringent proof requirement on plaintiffs. Under this second line of cases, often referred to as the *Fox-Mitchell* approach, the plaintiff must prove only that the product defect was a "substantial factor" in creating damage greater than that attributable solely to the underlying accident. *See Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199, 1206 (8th Cir. 1982); *Fox v. Ford Motor Co.*, 575 F.2d 774, 787 (10th Cir. 1978). If the factfinder is unable to segregate the harm caused by the initial collision from the harm caused by the product defect, the manufacturer is liable for the entire injury. *Mitchell*, 669 F.2d at 1206.

The rationale of the *Fox-Mitchell* approach is generally that injuries are often indivisible and that the *Huddell* approach imposes an unfair burden by requiring the plaintiff to "prove the impossible." *Id.* at 1203–04. In addition, the *Huddell* approach is criticized as inconsistent with

orthodox concurrent tortfeasor theory in which apportionment of injuries is not required to impose joint liability for the entire injury. *Fox*, 575 F.2d at 787; *see also* Levenstam & Lapp, 38 DePaul L. Rev. at 70.

As is apparent, the *Fox-Mitchell* approach, which has been adopted in a number of cases, *see, e.g., Fouche v. Chrysler Motors Corp.*, 646 P.2d 1020, 1024–25 (Idaho Ct. App. 1982); *Lee v. Volkswagen of Am., Inc.*, 688 P.2d 1283, 1288 (Okla. 1984), produces the opposite result of *Huddell* in the event of indivisible injury. Under *Huddell*, the plaintiff has the burden of showing apportionment, usually through expert testimony, and has no enhanced injury claim if the claim is indivisible.

3. *Application of comparative fault.* Another disputed issue relates to the relationship between enhanced injury claims and comparative fault. The majority view is that the principle of concurrent causation applies to cases involving enhanced injuries and, as a result, the principles of comparative fault apply. *See, e.g., Montag by Montag v. Honda Motor Co.*, 75 F.3d 1414, 1419 (10th Cir. 1996); *Gen. Motors Corp. v. Farnsworth*, 965 P.2d 1209, 1218 (Alaska 1998); *Daly v. Gen. Motors Corp.*, 575 P.2d 1162, 1169–70 (Cal. 1978); *Estate of Hunter v. Gen. Motors Corp.*, 729 So. 2d 1264, 1273–75 (Miss. 1999); *Harsh v. Petroll*, 887 A.2d 209, 218 (Pa. 2005); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex. 1984).

The majority view may be supported in part on the ground that it imposes upon users the responsibility to safely use products and that it would be unfair to impose costs of substandard plaintiff conduct on manufacturers, who would presumably pass on some or all of those costs to users and consumers, including those who use and consume products safely and wisely. *See* William J. McNichols, *The Relevance of the Plaintiff's Misconduct in Strict Tort Products Liability, the Advent of*

*Comparative Responsibility, and the Proposed Restatement (Third) of Torts*, 47 Okla. L. Rev. 201, 283–84 (1994).

A minority of cases, however, do not apply comparative fault principles or at least limit their application in the enhanced injury context. *See, e.g., Binakonsky v. Ford Motor Co.*, 133 F.3d 281, 288 (4th Cir. 1998); *D'Amario v. Ford Motor Co.*, 806 So. 2d 424, 426 (Fla. 2001); *Andrews v. Harley Davidson, Inc.*, 796 P.2d 1092, 1095 (Nev. 1990); *Green v. Gen. Motors Corp.*, 709 A.2d 205, 209 (N.J. Super. Ct. App. Div. 1998); *Alami v. Volkswagen of Am., Inc.*, 766 N.E.2d 574, 575 (N.Y. 2002). Some of these cases, however, arise in jurisdictions applying contributory negligence and may have been motivated by a desire to prevent the harsh result of completely denying a plaintiff recovery where the plaintiff's negligence was modest. *See, e.g., Binakonsky*, 133 F.3d at 284; *Andrews*, 796 P.2d at 1095; Restatement (Second) of Torts § 402A cmt. n, at 356 (1965). The minority viewpoint has its adherents in the academic literature. *See generally* Robert C. Reichert, *Limitations on Manufacturer Liability in Second Collision Actions*, 43 Mont. L. Rev. 109 (1982).

The reasoning behind the minority line of cases is often that a manufacturer has a duty to minimize the injurious effect of a crash no matter how the crash is caused and has a duty to anticipate foreseeable negligence of users and third parties. As noted by the New Jersey Supreme Court, " '[o]nce it is established that the defendant has a duty to protect persons from the consequences of their own foreseeable faulty conduct, it makes no sense to deny recovery because of the nature of the plaintiff's conduct.' " *Green v. Sterling Extruder Corp.*, 471 A.2d 15, 20 (N.J. 1984) (quoting Patricia Marschall, *An Obvious Wrong Does Not Make a Right: Manufacturer's Liability for Patently Dangerous Products*, 48

N.Y.U. L. Rev. 1065, 1088 (1973)). This viewpoint was reiterated in *Jimenez*, where the court observed that "the concept of 'enhanced injury' effectively apportions fault and damages on a comparative basis; defendant is liable only for the increased injury caused by its own conduct, not for the injury resulting from the crash itself." *Jimenez v. Chrysler Corp.*, 74 F. Supp. 2d 548, 566 (D.S.C. 1999), r*ev'd in part and vacated in part by Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439 (4th Cir. 2001). In addition, some cases support the minority rule on the ground that product manufacturers should be encouraged to design products that protect the user in the event of an accident. *Andrews*, 796 P.2d at 1095.

**C. Restatement (Third) of Torts.** Against the above clash of court cases and academic antlers, the American Law Institute in the Restatement (Third) of Torts: Products Liability considered the proper approach to enhanced injury claims in sections 16 and 17.

Section 16 of the Restatement (Third): Products Liability provides:

(a) When a product is defective at the time of commercial sale or other distribution and the defect is a substantial factor in increasing the plaintiff's harm beyond that which would have resulted from other causes, the product seller is subject to liability for the increased harm.

(b) If proof supports a determination of the harm that would have resulted from other causes in the absence of the product defect, the product seller's liability is limited to the increased harm attributable solely to the product defect.

(c) If proof does not support a determination under Subsection (b) of the harm that would have resulted in the absence of the product defect, the product seller is liable for all of the plaintiff's harm attributable to the defect and other causes.

(d) A seller of a defective product that is held liable for part of the harm suffered by the plaintiff under Subsection (b), or all of the harm suffered by plaintiff under Subsection (c), is jointly and severally liable or severally liable with other parties who bear legal responsibility for causing the harm,

determined by the applicable rules of joint and several liability.

Restatement (Third) of Torts:  Products Liability § 16, at 235–36 (1998).

Section 17 provides:

> (a) A plaintiff's recovery of damages for harm caused by a product defect may be reduced if the conduct of the plaintiff combines with the product defect to cause the harm and the plaintiff's conduct fails to conform to generally applicable rules establishing appropriate standards of care.

> (b) The manner and extent of the reduction under Subsection (a) and the apportionment of plaintiff's recovery among multiple defendants are governed by generally applicable rules apportioning responsibility.

*Id.* § 17, at 256.

With respect to the issue of indivisible harm in an enhanced injury case, the language of section 16(c) supports the *Fox-Mitchell* approach. This interpretation is confirmed by the Reporter's Note to section 16, which expressly states that the *Fox-Mitchell* approach is the majority viewpoint and is embraced in the Restatement (Third). *Id.* § 16 reporter's note to cmt. d, at 244. The Reporter's Note emphasizes, however, that section 16(c) does not formally shift any burden of proof to the defendant. *Id.* Instead, according to the Reporter's Note,

> if the plaintiff has established that the product defect increased the harm over and above that which the plaintiff would have suffered had the product been nondefective, and if, at the close of the case, proof does not support a determination of the harm that would have resulted in the absence of the product defect, then the defendant is liable for all the harm suffered by the plaintiff.

*Id.*

On the issue of application of comparative fault, the Restatement (Third) section 17(b) indicates that generally applicable comparative fault principles should apply among multiple defendants. The official comments to section 17, however, address only the issue of apportionment of plaintiffs' fault. The Reporter's Note emphasizes that a

majority of courts utilize comparative fault to reduce the recoveries of product liability plaintiffs, but does not discuss the issue of applying comparative fault principles among defendants. *Id.* § 17 reporter's note to cmt. a, at 259–60.

**D. Iowa Case Law on Enhanced Injury.** We begin discussion of Iowa law with a review of our prior approach to "indivisible injuries"— where two or more separate negligent acts or omissions result in an indivisible injury. In *Meek v. Long*, 258 Iowa 1309, 1314, 142 N.W.2d 385, 388–89 (1966), the court held that where the injuries to a plaintiff resulting from two separate accidents were indivisible, the defendant should not be permitted to benefit from the inability to attribute all damages to one incident or the other.

The holding of *Meek* was extended to situations involving separate defendants in *Treanor v. B.P.E. Leasing, Inc.*, 158 N.W.2d 4 (Iowa 1968). In *Treanor*, the plaintiff sought to recover for personal injuries allegedly suffered in two separate automobile accidents. *Treanor*, 158 N.W.2d at 5. We held that to the extent there were indivisible damages, both defendants would be jointly and severally liable for injuries which could not with reasonable certainty be attributed solely to the other. *Id.* at 7.

There are two Iowa Supreme Court cases subsequent to *Meek* and *Treanor* that deal with the question of enhanced injuries arising out of a single accident. In *Hillrichs v. Avoc Corp.*, 478 N.W.2d 70, 71–72 (Iowa 1991), a farmer brought an action against a manufacturer and an implement dealer after his hand was crushed in the husking bed of a corn picker. While being used to pick corn, the implement became plugged with corn husks. *Hillrichs*, 478 N.W.2d at 71. Unable to unplug the husking bed, the plaintiff reached into the equipment with a gloved hand. *Id.* at 72. The glove on his right hand entangled in the rollers,

trapping the plaintiff's hand for approximately one-half hour and resulting in significant injuries. *Id.* The plaintiff claimed that the corn picker was unreasonably dangerous because: (1) "it lacked an interlocking shield over the rollers that would disengage the power source when the shield was removed" and (2) "it lacked an emergency shut-off device" that would be triggered when a foreign body became entangled in the machine. *Id.*

At trial, the plaintiff sought jury instructions and verdict forms requiring the jury to apportion damages arising from the initial entanglement in the machine from damages caused by the failure of the machine to shut off power upon becoming entangled. *Id.* The trial court declined to give the plaintiff's requested instructions on apportionment. *Id.*

At first, the jury returned a verdict finding the plaintiff seventy percent at fault, the manufacturer twenty-five percent at fault, and the dealer five percent at fault. *Id.* The jury also found, however, that the defendants' fault was not a proximate cause of the plaintiff's injuries. *Id.* The trial court rejected the verdicts as inconsistent and directed the jury to reconsider the issues consistent with the instructions. *Id.* The jury then returned a verdict finding the plaintiff one hundred percent at fault. *Id.*

On appeal, this court held that the plaintiffs' claim for "enhanced injuries" against the manufacturer should have been submitted to the jury. *Id.* at 75. The court, however, disagreed with plaintiffs' apportionment theory. We stated:

> Although plaintiff suggests that any percentage of fault that might be assigned to him with respect to the initial entanglement in the machinery may not be assessed to him on the trial of his enhanced injury claim, we disagree with that contention. The fault of the plaintiff, if any, in becoming

> entangled in the machinery would be a proximate cause of the enhanced injury as well as the initial injury.

*Id.* at 76. Although *Hillrichs* involved an enhanced injury case where the defendant alleged comparative fault of the plaintiff, the rationale of the case would seem to apply to cases where a defendant sought to compare its fault with that of a codefendant or released party.

Thirteen months later, this court decided *Reed v. Chrysler Corp.*, 494 N.W.2d 224 (Iowa 1992). In *Reed*, an injured passenger brought a products liability action against an automobile manufacturer for injuries arising from a one-vehicle accident. *Reed*, 494 N.W.2d at 225. An intoxicated driver lost control of his vehicle, which ultimately slammed into a concrete bridge abutment, rolled, and traveled three hundred feet on the road upside down on its roll bar. *Id.* at 225–26. The plaintiff, a backseat passenger, suffered severe injuries in the mishap. *Id.* at 226. Like the driver, he was also intoxicated. *Id.*

The plaintiff in *Reed* claimed that the vehicle had a defective windshield and removable hardtop. *Id.* at 227. The district court granted the defendant a directed verdict on the ground that the plaintiff failed to present evidence of an alternative design, practicable under all the circumstances. *Id.*

We reversed the district court's grant of a directed verdict. *Id.* As a threshold matter, we held that the plaintiff had generated a jury question on whether there was an alternative design that was practicable under all the circumstances. *Id.* at 227–28. We then went on to consider other elements of a crashworthiness claim. Specifically, we considered whether Reed presented sufficient evidence to show what injuries would have resulted if the safer design method had been used. *Id.* at 228. We held that Reed offered sufficient evidence to show that the

injury to his arm would not have occurred if the vehicle had a more safely-designed metal top. *Id.*

We also addressed the question of the admissibility of the driver's and Reed's intoxication. *Id.* at 229–30. We held that the evidence was inadmissible. *Id.* at 230. We recognized that in *Hillrichs* we held that a plaintiff's comparative fault could be used against him in a claim for enhanced injuries. *Id.* We, nevertheless, reconsidered *Hillrichs* and held that a plaintiff's comparative fault should not be so assessed in a crashworthiness case unless it is shown to be a proximate cause of the enhanced injury. *Id.* (abrogating *Hillrichs*). Because there was no evidence that the driver's or Reed's intoxication had any bearing on how Reed's injuries were enhanced, the evidence of intoxication was inadmissible. *Id.*

> The core rationale of the result in *Reed* was expressed as follows:
>
> The theory [of an enhanced injury claim], which presupposes the occurrence of accidents precipitated for myriad reasons, focuses alone on the enhancement of resulting injuries. The rule does not pretend that the design defect had anything to do with causing the accident. It is enough if the design defect increased the damages. So any participation by the plaintiff in bringing the accident about is quite beside the point.

*Id.* This rationale is consistent with the minority view that comparative fault principles do not apply to claims of enhanced injury.

The *Reed* decision drew a sharp dissent. *Id.* (Carter, J., concurring in part and dissenting in part). The dissent argued that under Iowa's comparative fault framework, fault "resulting" in injuries was to be compared with a strict liability defendant in an enhanced injury case. *Id.* at 231. Unlike the majority, the dissent argued that the plaintiff's negligence was a proximate cause of the enhanced injury and that the conduct of the manufacturer was not an intervening cause in the case.

*Id.* The dissent asserted that the ordinary rules of proximate cause should apply in enhanced injury cases and that, in the comparative fault setting, any fault of the plaintiff or other person should be compared against the fault of the manufacturer. *Id.* The dissent is a clear articulation of the majority view which has prevailed in a number of jurisdictions and which has been embraced in the Restatement (Third) of Torts section 17(b).

Neither *Reed* nor *Hillrichs* directly considered whether to follow the approach of *Hubbell* or *Fox-Mitchell* on the question of indivisible injury. The Reporter's Note to the Restatement (Third) observed that the court in *Hillrichs* stated, " 'Damages may be awarded . . . when the only dispute is the amount of damages and the evidence affords a reasonable basis for estimating the loss.' " Restatement (Third) § 16 reporter's note to cmt. d, at 251 (quoting *Hillrichs*, 478 N.W.2d at 75). But this limited statement is true regardless of whether *Hubbell* or *Fox-Mitchell* is applicable. This issue thus presents a question of first impression under Iowa law.

In Iowa, however, the issue may have limited impact. In *Reed*, we discussed how a party may prove apportionment. First, a plaintiff must offer substantial evidence to prove, ordinarily through expert testimony, that the alleged defect in fact caused an enhanced injury. Once substantial evidence on the fact of enhanced injury has been established, the plaintiff is not required to prove the amount of injury with exactitude. *Reed*, 494 N.W.2d at 228. Because of the relatively liberal approach to establishing apportionment, the allocation of the burden of proof may not be as problematic as it once seemed.

**E.    Adoption of Fox-Mitchell Approach to Causation and Rejection of Divisible Injury Requirement.** As stated in the Reporter's Note, the Restatement (Third) section 16(c) expressly adopts the *Fox-*

*Mitchell* approach to indivisible harm. Although *Hubbell* has a few adherents, on this issue of first impression, we adopt the *Fox-Mitchell* approach. We believe the *Fox-Mitchell* approach to causation and the rejection of a requirement that plaintiff show a divisible harm is the soundest approach because it is the most consistent with our established law regarding indivisible injuries of successive tortfeasors in *Meek* and *Treanor*.

Specifically, we hold that in an enhanced injury case, the plaintiff has the burden of showing the fact of enhanced injury. This burden can be met by offering evidence that the design defect was a substantial cause of injury above and beyond that which would have occurred without the design defect. There is no requirement that a plaintiff prove a divisible injury. We regard the above statement of law as consistent with Restatement (Third) of Torts: Products Liability section 16(b) and (c).

**F. Application of Comparative Fault and Joint and Several Liability in Iowa Code Chapter 668.** *Reed* plainly stands for the proposition that comparative fault concepts of Iowa Code chapter 668 do not apply in enhanced injury cases. Because *Reed* involved the potential fault of the driver of the vehicle as well as the plaintiff, the holding in *Reed* applies to apportionment among defendants as well to apportionment between the plaintiff and the product manufacturer. The question is thus whether *Reed* should be abandoned in favor of the approach of the Restatement (Third).

A central issue lurking behind this question is whether the enhanced injury, or injury occurring because of the product defect in an automobile, was proximately caused by the conduct of the initial tortfeasor. In *Hillrichs*, we declared that the fault of the plaintiff, if any, would be a proximate cause of the enhanced injury. *Hillrichs*, 478

N.W.2d at 76. By contrast, in *Reed*, we stated that the intoxication of the driver or of Reed did not bear on the issue of how Reed's injuries were enhanced by the construction of the Jeep's roof. *Reed*, 494 N.W.2d at 230.

Under Iowa law, tortfeasors are responsible for the natural and foreseeable consequences of their acts. *Virden v. Betts & Beer Constr. Co.*, 656 N.W.2d 805, 808 (Iowa 2003). We have repeatedly held that the tortious conduct of others can be natural and foreseeable in the context of medical negligence which results after a plaintiff is injured. *See Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982); *Smith v. Conn*, 163 N.W.2d 407, 410 (Iowa 1968). It is hard to see how a different approach should apply to a case involving a product defect in an automobile. As noted by the Alaska Supreme Court, "it is just as foreseeable to an original tortfeasor that equipment in a car may malfunction as it is that a doctor may act negligently in treating the plaintiff's injuries." *Farnsworth*, 965 P.2d at 1218; *see also Harsh*, 887 A.2d at 218 ("insulating a negligent tortfeasor from liability for enhanced injuries based on his status as the sole cause of some other distinct harm would engender substantial incongruities in Pennsylvania law").

In addition, the question of whether fault should be apportioned in enhanced injury cases is no longer solely a question of common law development. Instead, we must consider the provisions of Iowa Code chapter 668, which codify comparative fault principles. Unlike many comparative fault statutes which apply comparative fault concepts only in cases involving negligence, *see, e.g.*, *Melia v. Ford Motor Co.*, 534 F.2d 795, 802 (8th Cir. 1976) (applying Nebraska law); *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1367 (Okla. 1974), Iowa's comparative fault statute expressly states that the fault of other parties is to be compared

in cases of negligence, recklessness, and strict liability. *Coker v. Abell-Howe Co.*, 491 N.W.2d 143, 147 (Iowa 1992) (citing Iowa Code § 668.1 (1991)). While an exception to the application of comparative fault principles for enhanced injury cases might be supported on policy grounds, the legislature has not provided for such an exception. *See Montag*, 75 F.3d at 1419 (noting broadly worded comparative fault act applies to enhanced injury claims).

Further, the legislature in Iowa Code section 668.3(3) has expressly stated that "[i]n determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party and the extent of the casual relation between the conduct and the damages claimed." In this language, we conclude that in enhanced injury cases, the legislature has directed that the casual relation between the conduct of a product manufacturer and the resulting damages is one of the two elements to be considered in assigning a percentage of liability, but is not solely determinative as to the allocation of fault.

We recognize, however, that in cases where the factfinder has found a divisible injury, the liability of the product manufacturer, though subject to comparative fault analysis, is limited to the amount of the divisible injury. Restatement (Third) § 16(b), at 236. Having found that the comparative fault provisions of Iowa Code chapter 668 apply to enhanced injury cases, it follows that the joint and several liability provisions of Iowa Code section 668.4 apply to parties liable for divisible or indivisible injuries.

In light of the Restatement (Third), the evolving case law from other jurisdictions, and our duty to interpret Iowa Code chapter 668 in accordance with the legislative intent revealed by its language, we

overrule *Reed* and align our law with the Restatement (Third) and the majority of jurisdictions.

### III.  Conclusion.

We adopt the *Fox-Mitchell* approach to the required causation in enhanced injury cases.  We further hold that the principles of comparative fault and joint and several liability found in Iowa Code chapter 668 apply in enhanced injury cases.  As a result, the answer to both certified questions is "Yes."

**CERTIFIED QUESTIONS ANSWERED.**