# IN THE COURT OF APPEALS OF IOWA

No. 23-2025
Filed November 13, 2025

**ELLIE T. SHIMP, ZACH SHIMP, and KERRI SHIMP,**
    Plaintiffs-Appellants,

**vs.**

**TIMOTHY A. GIBBONS, MD., CHAD H. BOYER, P.A.-C., JARED A. KNOWLES, P.A.-C., MASON CITY CLINIC, PC, MERCY HEALTH SERVICES-IOWA, CORP. d/b/a MERCYONE NORTH IOWA MEDICAL CENTER, and MERCY MEDICAL CENTER-NORTH IOWA,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.


Plaintiffs, an injured jet skier and her parents, challenge a pretrial ruling confirming that under Iowa Code chapter 668 (2020) any fault of the defendant medical providers would be compared with the fault of the original tortfeasor, who settled with the plaintiffs. **REVERSED AND REMANDED.**


Ryan G. Koopmans (argued) of Koopmans Law Group, LLC, Des Moines, and H. Daniel Holm Jr. and Eashaan Vajpeyi of Ball, Kirk & Holm, P.C., Waterloo, for appellants.

Paul J. Esker (argued) and Desirée Kilburg of Bradley & Riley PC, Iowa City, for appellees Mercy Health Services-Iowa, Corp. d/b/a MercyOne North Iowa Medical Center and Mercy Medical Center-North Iowa.

John A. Maschman (argued) and Frederick T. Harris of Lamson Dugan & Murray LLP, West Des Moines, for appellees Timothy A. Gibbons, MD., Chad H. Boyer, P.A.-C., Jared A. Knowles, P.A.-C., and Mason City Clinic, PC.

Heard at oral argument by Tabor, C.J., and Greer, Ahlers, Badding, and Buller, JJ.

**TABOR, Chief Judge.**

"Earth and sky, woods and fields, lakes and rivers, the mountain and the sea, are excellent schoolmasters, and teach some of us more than we can ever learn from books."[1] Here, Clear Lake has taught us to navigate the shoals of comparative fault principles.

On the lake, in the summer of 2018, Ellie Shimp suffered serious injuries to her leg in jet ski accident. Ellie and her parents sued and settled with the jet ski operator and owners. Now the Shimps are suing Ellie's medical providers, alleging malpractice in the treatment of her injury. In a pretrial motion, the medical providers sought to "confirm the applicability of the Comparative Fault Act to the released persons." The district court granted the motion, finding that any fault of the medical providers could be compared with the fault of the released parties under Iowa Code chapter 668 (2020). In this interlocutory appeal, the Shimps ask us to reverse that ruling. Because it would be error to instruct the jury to compare the fault of the released parties with any fault of the medical providers on the question of their breach of duty to their patient, we reverse and remand.

**I. Facts and Prior Proceedings**

After a collision of two jet skis on Clear Lake crushed her leg, Ellie arrived at Mercy Medical Center-North Iowa in Mason City, where she received treatment for a left tibial plateau fracture. The next day, her medical providers diagnosed her with a popliteal artery injury and occlusion. They transferred her by helicopter to

---

[1] From The Use of Life (1894) by Sir John Lubbock, First Baron Avebury.

the Mayo Clinic. According to a review of Ellie's medical records by Dr. Matt Weresh, an orthopedic expert for Mercy, "Once received by the Mayo Clinic, she was taken to surgery immediately, and a vascular bypass was performed to the area of damaged arteries in her leg. Ellie reportedly has some muscle loss and weakness of dorsiflexion, as after effects from her injury. She did not have an amputation."

Ellie and her parents first sued the jet skis owners and operator (jet ski defendants) for negligence. The Shimps settled with the jet ski defendants. The Shimps then filed a lawsuit for medical malpractice against Dr. Timothy Gibbons, physician assistants Chad Boyer and Jared Knowles, Mercy Medical Center, and the Mason City Clinic, PC (medical providers). The Shimps allege that Ellie's medical providers failed to timely diagnose and treat the popliteal artery injury, resulting in severe injury, disfigurement, and disability of her left leg. The medical providers asserted comparative fault as an affirmative defense in their answers. They moved to confirm that chapter 668 applies to compare their fault with the jet ski defendants. *See* Iowa Code § 668(7). After hearing arguments, the district court confirmed the applicability of the comparative fault chapter.

The Shimps sought interlocutory appeal. Our supreme court granted review and transferred the case to us.

## II. Scope and Standard of Review

Whether Iowa Code chapter 668 applies to these proceedings is a matter of statutory interpretation, so we review for the correction of errors at law. *Mulhern v. Cath. Health Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011).

**III. Analysis**

This interlocutory medical-malpractice appeal raises a single question: should a jury be instructed to compare the fault of the medical providers who allegedly misdiagnosed Ellie's arterial injury with the fault of the jet ski operator and owners who settled with the Shimps in their original negligence suit?

To answer this question, we start with the comparative fault principles codified in Iowa Code chapter 668. The chapter describes how to determine liability: "In the trial of a claim involving the fault of more than one party to the claim, . . . the court . . . shall instruct the jury to answer special interrogatories" in which the jury must indicate "[t]he percentage of total fault allocated to each claimant, defendant, third-party defendant, person who has been released from liability under section 668.7," and the injured party.[2] Iowa Code § 668.3(2).

From that provision, we focus on two key terms: fault and claim. One is defined, but the other is not. The chapter defines "fault" broadly as "acts or omissions that are in any measure negligent or reckless . . . or that subject a person to strict liability." *Id.* § 668.1(1). But "claim" is undefined.

To avoid comparing fault, the Shimps assert that their claim against the medical providers is not the same claim as the claim they settled against the jet ski defendants. They argue the word claim cannot mean "any wrong ever done to the same party, lest the word lose all meaning." To support that argument, the Shimps cite *DeMoss v. Hamilton*, where our supreme court found that a patient's fault for

---

[2] The Shimps and the medical providers agree that the jet ski defendants are released parties under Iowa Code section 668.2(3).

his poor health cannot be compared with the medical negligence alleged in the patient's cause of action.[3]  644 N.W.2d 302, 307 (Iowa 2002).  *DeMoss* embraced *Fritts v. McKinne*, which stated that a physician "may not avoid liability for negligent treatment by asserting that the patient's injuries were originally caused by the patient's own negligence."  934 P.2d 371, 374 (Okla. Civ. App. 1996)).  The core concept is that "even a patient who suffers a self-inflicted injury is entitled to non-negligent medical treatment."[4]  *DeMoss*, 644 N.W.2d at 305.  The Shimps believe that *DeMoss* also prohibits the medical providers from avoiding liability for negligent treatment by asserting that the patient's injuries were caused by a third party's negligence.

The medical defendants disagree that *DeMoss* applies.[5]  They contend "the law does not afford the same protection to someone *other than* the patient when that other person caused or contributed to the injury necessitating the medical treatment."  They rely on *Jahn v. Hyundai Motor Co.*, where our supreme court held that the fault of a negligent driver could be compared by the jury when evaluating Jahn's products liability claim against Hyundai.  773 N.W.2d 550, 552

---

[3] Brian DeMoss sought medical care for chest pains.  *Id.* at 304.  After testing, his doctor prescribed him antibiotics and discharged him.  *Id.*  He died of a heart attack the next morning, and his wife sued his doctor for medical malpractice.  *Id.*  At trial, the judge permitted the jury to assign a percentage of fault to Brian for his failure to follow recommendations by previous physicians.  *Id.* at 305.  His wife appealed.  *Id.*  The supreme court concluded it was error "to permit the jury to compare Brian's fault with Hamilton's."  *Id.* at 307.

[4] Iowa courts do recognize "a comparative fault defense to a medical malpractice action when the plaintiff fails to follow the doctor's instructions as to follow-up care."  *Mulhern*, 799 N.W.2d at 120 (citing *DeMoss*, 644 N.W.2d at 306).

[5] The medical providers filed separate appellees' briefs: one by the Mercy defendants and one on behalf of Gibbons, Boyer, Knowles, and the Mason City Clinic.  Because they take consistent positions, we address them together.

(Iowa 2009). *Jahn* explained: "Under an enhanced injury theory, the product defect is not the cause of the initial accident. As a result, the manufacturer cannot be held liable for injuries arising out of the initial collision. The manufacturer, however, is liable for enhanced injuries over and above the injuries caused by the initial collision." *Id.* at 553. Analogizing to *Jahn*, the medical providers contend that the alleged misdiagnosis of Ellie's popliteal artery occlusion was an "enhanced injury" for which the jury should be instructed to compare the fault of the original tortfeasors and the medical providers. To counter, the Shimps maintain that *Jahn* does not apply to cases of professional negligence, "which is to say that it did not involve a contractual (or quasi-contractual) arrangement in which the defendant agreed to remedy an already-existing problem."

After weighing both positions, we find *DeMoss* provides better guidance than *Jahn* in analyzing this issue. True, *DeMoss* does not explicitly hold that a subsequent medical malpractice action is a separate claim. But its approach to comparative fault suggests that view. The court states, "our threshold question must be *what is the conduct at issue?*" *DeMoss*, 644 N.W.2d at 307. The court found the patient's conduct contributing to his heart attack *before* seeking treatment was "simply irrelevant to the question of medical negligence." *Id.* Only if the jury found the doctor at fault for misdiagnosing or mistreating the patient would the patient's state of health "become potentially relevant to the remaining questions of proximate cause, lost chance of survival and life expectancy. And on those questions, whether his state of health resulted from poor lifestyle choices or bad genes would make no difference." *Id*. Applying that reasoning here, only if

the medical providers were at fault for misdiagnosing Ellie's artery occlusion, would the extent of her leg injuries become potentially relevant to causation or scope of liability questions. And on those questions, whether her injuries resulted from her own negligence *or* the negligence of the jet ski defendants would make no difference. *See id.*

What's more, chapter 668 treats claimants, released parties, and defendants all the same when allocating fault. Iowa Code § 668.3(2). So no statutory basis exists for limiting *DeMoss* to situations invoking the plaintiff's own negligence. Thus, we conclude that *DeMoss* applies to these facts, and the jury should not be instructed to compare the medical provider's fault with the fault of the released third-party jet ski defendants.[6]

On a practical level, we share the Shimps' concern that it would be unworkable to ask a jury to compare fault in a case where the suit against the original tortfeasor had not been settled. Under that scenario, the original tortfeasors could raise Ellie's contributory negligence as a defense, but the medical providers could not. No clear path emerges for the district court to draft those special interrogatories. As the Shimps argue: "That is the very definition of separate claims."

---

[6] The medical providers insist that they are not asking to overrule *DeMoss*. But the Mercy defendants do venture that if we find *DeMoss* "establishes that the original tortfeasor's fault cannot be compared against the medical providers in a subsequent medical malpractice case, the Court should overrule that portion of the opinion." Of course, our court cannot overrule supreme court precedent. *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

Beyond disputing the expansion of *DeMoss*, the medical providers describe Ellie's damages as "indivisible" and contend that the popliteal injury was caused by the original tortfeasor, not their alleged malpractice.[7] They point to the "causation opinions" of their expert, Dr. Weresh, who believed that "the fate and ultimate function of Ellie's left leg was determined at the time" of the jet ski impact.

But as the Shimps note, "that is not a comparative fault argument; it is a causation argument, and one that defendants are free to make to the jury." Causation is an element in the prima facie negligence case, and it remains there.[8] At trial, if the Shimps fail to prove the causation element of their case, then the medical defendants will not need the court to instruct the jury under chapter 668. Chapter 668 applies when fault is established and when there are multiple parties to the same claim. Iowa Code § 668.3(2); *Schwennen v. Abell*, 430 N.W.2d 98, 102 (Iowa 1988). That is not the case here.

The Mercy defendants also claim their position is supported by section 35 of the Restatement (Third) of Torts: Liability for Physical or Emotional Harm, which they acknowledge reiterates the original tortfeasor rule:

> An actor whose tortious conduct is a factual cause of harm to another is subject to liability for any enhanced harm the other suffers due to the efforts of third persons to render aid reasonably required by the other's injury, so long as the enhanced harm arises from a risk that inheres in the effort to render aid.

---

[7] The Shimps reply that Ellie's injuries are divisible because the medical providers are liable for less than the entire amount of damages that she suffered.

[8] "To establish a prima facie case of medical malpractice, a plaintiff must produce evidence that (1) establishes the applicable standard of care, (2) demonstrates a violation of this standard, and (3) develops a causal relationship between the violation and the injury sustained." *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 539 (Iowa 2022) (quoting *Oswald v. LeGrand*, 453 N.W.2d 634, 635 (Iowa 1990)).

But the parties disagree on how the original tortfeasor rule impacts the question on appeal. For sure, Iowa courts have long recognized that "tortfeasors are responsible for the natural and foreseeable consequences of their acts." *Jahn*, 773 N.W.2d at 559–60. This rule applies to the medical context, so "assuming there was no negligence in selecting the doctor . . . the general rule is that a tortfeasor is responsible for the negligence of an attending physician in treating the injured party." *Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982). By operation of this rule, the original tortfeasor is responsible for the entire injury resulting from medical malpractice.

The medical providers argue that because an original tortfeasor is responsible for subsequent medical negligence, the two actions are a part of the same claim, and the original tortfeasor's fault should be compared with the medical providers' fault.[9] But that argument overstates the rule. The original tortfeasor rule extends the scope of the original tortfeasor's liability by operation of law, making the original tortfeasor vicariously responsible for the entirety of the subsequent harm. *See State ex rel. Miller v. Philip Morris Inc.*, 577 N.W.2d 401, 406 (Iowa 1998) (treating a case involving an original tortfeasor and later medical malpractice as a "classic case[] involving vicarious liability"). Thus, both the original tortfeasor and subsequent medical provider are fully responsible for the injuries caused by

---

[9] The Mercy defendants also point to comment (d) of section 35, the Restatement (Third) of Torts: Liability for Physical and Emotional Harm, which discusses the interplay of the original tortfeasor rule with comparative fault statutes. But no Iowa case law suggests that our supreme court has adopted that comment, so we do not address it here.

medical negligence; there is no fault to be compared.[10]  Because we are dealing with a matter of vicarious liability, chapter 668 does not apply.

This analysis fits with our concepts of indemnity.  In *Hunt*, the original tortfeasor could seek indemnity from the hospital because the original tortfeasor was responsible for the later medical malpractice by operation of law.  *Philip Morris Inc.*, 577 N.W.2d at 406 (citing *Hunt*, 252 N.W.2d at 447–48).  If, in this case, we allowed the jury to compare fault between the original tortfeasor and the medical providers, we would be stepping on *Hunt*'s toes by making neither party fully responsible for the later medical harm and eliminating the need for indemnity.  But our case law treats both parties as fully responsible through principles of vicarious liability and allows indemnity.

For these reasons, we hold that chapter 668 does not apply to compare the fault of the allegedly negligent medical providers with the fault of the released third-party jet ski defendants.  We reverse the district court's order confirming the applicability of the comparative fault act to these facts and remand for further proceedings.

**REVERSED AND REMANDED.**

Ahlers and Badding, JJ., concur; Buller, J., specially concurs; and Greer, J., dissents.

---

[10] In *Philip Morris Inc.*, the court analyzed *Hunt v. Ernzen*, 252 N.W.2d 445 (Iowa 1977).  There, the court held a tortfeasor liable for injuries inflicted by the treating hospital.  *Id.* at 447.

**BULLER, Judge** (specially concurring).

I concur in the judgment for two reasons.

First, although *DeMoss v. Hamilton*, 644 N.W.2d 302 (Iowa 2002), is not an airtight fit for the facts here, I believe it strongly nudges us toward reversing unless or until it is overruled. In my view, the district court's pretrial ruling cannot be reconciled with *DeMoss*'s general rule that a factfinder cannot consider the original tortfeasor's negligence when evaluating the medical negligence of subsequent treatment providers. *See id.* at 307. And as an intermediate appellate court, I am bound to follow supreme court precedent even when I question whether it has overstayed its welcome.

Second, although the dissent may be correct that Iowa ends up following comment (d) to section 35 of the Restatement (Third) of Torts, the supreme court has not gone there yet and I am skeptical our court can adopt it with *DeMoss* looming overheard. This case highlights my frustration with the ad-hoc and partial adoption of the restatement. It leaves our intermediate appellate court, the district courts, and practitioners wondering which if any of these "evolving legal concepts" (as the dissent calls them) govern today's litigation. And it undermines the stability and predictability of the law.

Last, I join in Judge Greer's observation that—as one of the parties requested in the briefing—this might have been a case better suited for supreme court retention than disposition by our court. But, since the case is here, I concur in the judgment to reverse based on existing precedent.

**GREER, Judge** (dissenting).

In what feels like a yoga exercise, each of the parties to this medical malpractice matter asks us to stretch the holdings of cases decided by our supreme court. The plaintiffs (the "Shimps") ask us to expand the holding of *DeMoss v. Hamilton*, 644 N.W.2d 302 (Iowa 2002), to prohibit the factfinder from comparing a third party's fault (the "jet ski defendants") in the malpractice case. *DeMoss* held that generally a plaintiff's fault cannot be considered when determining whether a medical provider negligently breached the standard of care. *Id.* at 307. On the other side, the defendants (the "medical providers")[11] ask us to expand the enhanced injury reasoning of *Jahn v. Hyundai Motor Co.*, 773 N.W.2d 550 (Iowa 2009), to the question this medical malpractice case raises. They argue that *Jahn* opens the door to allowing the medical providers to compare the fault of the jet ski defendants for any enhanced injury that the Shimps claim was caused by the negligent care of the medical providers. Both parties contest the legal arguments of the other, and so, we are left to make sense of how they should proceed at trial.[12] From my review, I am not on board with extending the holding of *DeMoss* or prohibiting the application of the comparative fault act under these facts, but instead would find that the enhanced injury analysis developed through the extension of *Jahn* and the application of section 35 of the Restatement (Third) of Torts should be employed.

---

[11] The Shimps brought a lawsuit against Timothy Gibbons, MD, Chad Boyer, PA-C, Jared Knowles, PA-C, Mercy Health Services–Iowa, Corp., and the Mason City Clinic, PC.

[12] As the majority notes, this case comes to us before trial, on interlocutory appeal from the district court's ruling allowing the medical providers to compare the jet ski defendants' fault in the medical malpractice trial.

I write because I do not feel the majority opinion correctly tackled the task and there may be confusion about how courts and litigants address these concerns in the future based upon some of the conclusions made. Injured citizens are entitled to full and fair compensation for their injuries, but, in line with that goal, "[a] successful plaintiff is entitled to one, but only one, full recovery, no matter how many theories support entitlement." *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 770 (Iowa 1999) (quotation marks and citation omitted). I think our role is to look at how the process here assures that goal through the application of our existing law. Of course, as the Shimps suggest in their appellate briefing, "a new precedential opinion from the supreme court may give lower courts and the bar needed and valuable guidance in this area." Seems like a good idea to me.

So, I start with how the parties handled the appellate briefing to answer the question posed. In a medical malpractice trial, should a jury be instructed to compare the fault of the medical providers with the fault of a third-party tortfeasor, the released jet ski defendants, with respect to the injuries Ellie Shimp sustained? And specific to this case, as the Shimps framed the question, "is the negligent jet ski driver who hit Ellie (and entered into a settlement agreement) 'liable upon the *same claim*' as the medical providers who violated the standard of care in their treatment of Ellie's injuries?" (Emphasis in original.) I start with the procedural background.

The Shimps initially sued the jet ski operator and owners who they assert caused the injury; that claim settled. Then, arguing her medical providers negligently delayed diagnosing arterial damage caused by the accident, the

Shimps brought a separate lawsuit against the medical providers involved in the aftercare. Those medical providers successfully argued to the district court that the fault of the jet ski defendants should be compared to any fault of the medical providers. Before trial and in this interlocutory review, we must decide if a comparative fault exercise is warranted under these facts. Making our task more complicated, each party raises several alternative paths to get to the answer they advocate.

### I. *DeMoss* and Its Application.

The Shimps approach this issue from several angles. I start with the Shimps' focus on *DeMoss* to support their challenge to the district court's pre-trial order. In *DeMoss*, our supreme court said that "[a]ny 'fault' on [the decedent's] part for conduct contributing to his heart attack is simply irrelevant to the question of medical negligence underlying DeMoss's cause of action." 644 N.W.2d at 307. From that holding, the Shimps contend if Iowa's comparative fault statute does not apply to compare fault between a plaintiff and a medical provider in a malpractice action, then it follows the comparative fault statute cannot apply to compare the fault of a released third party. The medical providers counter that *DeMoss* is distinguishable from the present action, but if we decide differently, we should overrule the portion of the opinion that prohibits the extension that the Shimps advocate. Still, the overall premise in *DeMoss* was not that a patient's negligent conduct may *never* be considered by a jury in a medical malpractice case, but that it might in "limited circumstances." *Id.* at 305–06. So, in cases where the patient's

fault can be properly considered, how does that fact change the Shimps' argument to extend *DeMoss*?

To the extent, as the majority frames it, that the medical providers are looking to avoid liability for negligent treatment by asserting the patient's injuries were caused by a third party, the majority ignores reality. The medical providers' interest is in only paying for the damages they caused in this claim. There is no reciprocal rule that just because the tortfeasor has responsibility for the fault of a medical provider for its negligent medical treatment following the accident that the medical providers have responsibility for a tortfeasor's fault in causing damages to the patient. Thus, while a medical provider may not be able to compare the fault of the patient, nothing in our caselaw or statutes prohibits the allocation of responsibility for a claim of damage between the original tortfeasor and the medical providers. Even the Shimps agree that the medical providers and the jet ski defendants should not be responsible for the same damages.

Still, the Shimps contend that *DeMoss* can be extended to support the argument that chapter 668 only applies to "claims" that allow a jury to assign a "percentage of the total fault allocated to each *claimant*, defendant, third-party defendant" and "person[s] who [have] been released." *See* Iowa Code § 668.3(2)(b) (2020)[13] (emphasis added). The Shimps point out that these are the "parties" under the chapter, so that

---

[13] Iowa Code section 668.3(1)(a) provides:
> Contributory fault shall not bar recovery in an action by a claimant to recover damages for fault resulting in death or in injury to person or property unless the claimant bears a greater percentage of fault than the combined percentage of fault attributed to the defendants, third-

> under Chapter 668, if a *party's* fault is not part of the same claim as the defendant's fault, then the jury cannot assign any percentage of fault to that party, regardless of whether they are a "claimant," another "person named as defendant,["] a "person who has been released pursuant to section 668.7," or a "third-party defendant." [Iowa] Code §§ 668.3, 668.7.

From a practical perspective, I cannot follow that reasoning. There are many factual situations that invoke the application of chapter 668 where a claimant's fault is not at issue, but still require the comparison of fault among tortfeasors. The fact that our caselaw supports a policy decision to limit, not to fully exclude, proof of a patient's fault does not take me to the conclusion that the Shimps and the majority advance—that "no statutory basis exists for limiting *DeMoss* to situations invoking the plaintiff's own negligence." If part of the rationale is that crafting jury instructions would be hard, there are ways to bifurcate the trial to address separate issues. In any event, here, these parties would not have difficulty with the instructions because the patient's fault is not at issue.

In sum, I cannot follow the majority's conclusion related to an extension of the holding in *DeMoss*.

## II. Separate Claims.

Next, the Shimps contend that the malpractice action is a "successive, divisible claim" separate from "the original tort claim." They argue that these different claims cannot be appropriately compared for fault purposes. The majority falls into this theory, pointing out that chapter 668 does not define "claim" and

---

party defendants and persons who have been released pursuant to section 668.7, but any damages allowed shall be diminished in proportion to the amount of fault attributable to the claimant.

agreeing that the medical malpractice action is a separate claim from the underlying tort case claim because we should compare the "conduct at issue." While I cannot agree with that conclusion, I also do not believe it has much to do with how we should arrive at the answer to the core question.

On their end, the medical providers argue that because the damages arise from the jet ski accident, the successive malpractice claim overlaps with the initial jet ski tort—so the different-claim theory does not apply here. They contend that chapter 668 applies to medical malpractice claims and they can determine the "*percentages of fault*" by having the trier of fact consider "both the *nature of the conduct* of each party and the extent of the *causal relation between the conduct and the damages* claimed." *Id.* § 668.3(3) (emphasis added). From a reading of this statutory section, I would assert that comparing the conduct at issue is exactly what is required in examining who is at fault for the damages assessed in this one claim.

My position is that we should look at a "claim" as one for damages involving differing theories of recovery. And while chapter 668 does not define the word "claim," when it does make reference to the term, it pertains to a claim to recover damages (section 668.3(2)(b)). There is some help in other similar sections of the Iowa Code. Referencing the recovery for damages, a "claim" has been defined in our Iowa Tort Claims Act as:

> a. Any *claim* against the state of Iowa *for money* only, *on account of damage to or loss of property* or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment, under circumstances where the

state, if a private person, would be liable to the claimant for such damage, loss, injury, or death.

b. Any *claim* against an employee of the state *for money* only, *on account of damage to or loss of property or on account of personal injury or death*, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment.

*Id*. § 669.2(3) (emphasis added). So, I agree with the medical providers that the claim for damages arising from the jet ski incident makes this one claim.[14] Plus, the Shimps argue that a later credit could apply if there are duplicate damages, suggesting that the claim does overlap as one. This conclusion is further supported by the original tortfeasor doctrine because the damages related to any negligent medical care following the incident are part of the total damages allocated to the plaintiff in the claim made against the tortfeasor. Our rule is that we favor granting a plaintiff only one "full recovery, no matter how many theories support entitlement." *See Revere Transducers, Inc.*, 595 N.W.2d at 770 (citation omitted). So, along with the judicial economy of deciding a claim in one lawsuit, I would find that there are not separate claims involved here in deciding what recovery the Shimps are entitled to and who should have to pay.

Thus, I reject the same claim arguments. To me, the solution to the parties' concerns here is answered through *Jahn* and section 35 of the Restatement (Third) of Torts—Enhanced Harm Due to Efforts to Render Medical or Other Aid. So, we turn to the medical providers' argument.

---

[14] The medical providers point out that the demand for damages made in each case are similar—asking both the jet ski defendants and the medical providers to pay all medical expenses, pain and suffering, loss of function, etc.

**III. Enhanced Injury under *Jahn* and Section 35 of the Restatement (Third).**

The majority gave little consideration to the medical providers' enhanced injury argument.  First, the majority distinguished *Jahn*, which involved a products liability case, as different from a "professional negligence" case with a "contractual (or quasi-contractual) arrangement" such as we have here.  But, our supreme court has made it clear that although labeled "medical malpractice," a claim that the medical provider has breached the standard of care is "essentially a negligence cause of action."  *Asher v. OB-Gyn Specialists, P.C.*, 846 N.W.2d 492, 498 (Iowa 2014) (discussing the applicability of the Restatement (Third) of Torts in medical negligence cases), *overruled, in part, on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016).  And chapter 668 applies to negligence cases. *See Mulhern v. Cath. Health Initiatives*, 799 N.W.2d 104, 117 (Iowa 2011) (noting chapter 668 "expressly states that the fault of other parties is to be compared in cases of negligence, recklessness, and strict liability" (quoting *Jahn*, 773 N.W.2d at 560)).  So, that distinction between a product liability case and general negligence case is not supported under our current case law.  Looking beyond just products liability cases, in the analysis found in *Jahn*, the supreme court referenced ordinary negligence cases as examples to support its holding.  773 N.W.2d at 559 (citing *Treanor v. B.P.E. Leasing, Inc.*, 158 N.W.2d 4, 5–7 (Iowa 1968) and *Meek v. Long*, 142 N.W.2d 385, 388–89 (Iowa 1966)).

I also think it is instructive that, in *Jahn*, our supreme court referenced a medical negligence case to support similar treatment between these two types of

causes of action related to the allocation of fault. *Id*. at 560 ("We have repeatedly held that the tortious conduct of others can be natural and foreseeable in the context of medical negligence which results after a plaintiff is injured. It is hard to see how a different approach should apply to a case involving a product defect in an automobile." (internal citations to medical malpractice cases omitted)). Although in *Jahn*, the Restatement (Third) of Torts: *Products Liability* sections 16 and 17 apply only to product liability cases—different than the application of what has been advocated in this case under Restatement (Third) of Torts: *Liability for Physical and Emotional Harm* section 35—the supreme court affirmed the application of the Restatement (Third) treatment of enhanced injuries even though there was a similar public policy concern as the one involved here. That public policy concern applied to product liability cases was as follows:

> We recognize policy arguments exist for creating an exception to the comparative fault approach when the defendant owed the plaintiff a duty to protect the plaintiff from harm. We declined to recognize an exception in *Jahn*, even though a similar policy argument supported denying the motor vehicle manufacturer in a crashworthiness case a comparative fault defense based on the driver's negligence. A reasonable legislator could conclude that vehicle manufacturers must foresee and protect against collisions and that their incentive to build in safety should not be diluted by allowing jurors to compare the fault of careless drivers. Similarly, a reasonable legislator could conclude that mental health practitioners with a duty to prevent suicide should be denied a comparative fault defense when the patient kills herself. The legislature, however, created no such exceptions in the Iowa Comparative Fault Act, and it is not our prerogative to rewrite the statute to do so.

*Mulhern*, 799 N.W.2d at 117. So, I think the enhanced-injury discussion deserves more consideration than the majority gave it.

On top of distinguishing *Jahn* as not helpful, the majority also discounted the medical providers' assertion that section 35 of the Restatement (Third) should answer the question presented. Section 35 provides:

> An actor whose tortious conduct is a factual cause of harm to another is subject to liability for any enhanced harm the other suffers due to the efforts of third persons to render aid reasonably required by the other's injury, so long as the enhanced harm arises from a risk that inheres in the effort to render aid.

Restatement (Third) of Torts: *Liab. for Phys. & Emot. Harm* § 35 (Am. Law Inst. 2010)*.* "Negligence in medical treatment of a tortiously caused injury is the most common invocation of the rule in this section." *Id.* at cmt. (a). The majority briefly mentions this section but then contends that no Iowa cases have adopted comment (d) to that section, so they refuse to consider it. Comment (d) states, in part:

> The rule in this Section does not narrow the scope of liability of a tortfeasor; indeed it does quite the opposite, by declaring that subsequent negligence of one rendering assistance to an injured person is not a superseding cause of any enhanced harm, thereby including such harm within the initial tortfeasor's scope of liability. Indeed, the advent of comparative contribution, a derivative of comparative responsibility, permits a more refined apportionment of liability between the initial tortfeasor and a subsequent tortious actor who is a cause of enhanced harm.

*Id*.

True, it is not entirely clear if our supreme court has adopted section 35 comment (d). But our supreme court has said that "[w]e often look to the Restatements for guidance." *Barker v. Capotosto*, 875 N.W.2d 157, 166 (Iowa 2016). And in my review of section 35, in two of the comments, the authors

reference several Iowa cases that reinforce the section's analysis.[15] Plus I find it significant that in *Asher*, when the supreme court emphasized that the factual causation and scope of liability provisions of the Restatement (Third) specifically apply to a claim of medical negligence, it gave other examples, noting: "Restatement (Third) section 35, comment a uses an example of a negligent medical professional in discussing the medical professional's scope of liability. *Id.* § 35 cmt. a, illus. 1, at 592–93." *Asher*, 846 N.W.2d at 498. Thus, by implication, I would assert our supreme court considered section 35 a proper treatment of enhanced injuries. And in *Jahn*, our supreme court noted that in the midst of the "clash of court cases and academic antlers" it considered the Restatement (Third) sections [16 and 17] on enhanced injury claims in products liability to be the "proper approach." 773 N.W.2d at 555. Thus, it is less of a stretch of our existing law to extend that proper approach here under the direction of another section of the Restatement.

So, I would apply the teachings of *Jahn* and section 35 of the Restatement (Third) and find that the fault of the released party, whose negligence is a cause of the underlying accident and of Ellie's injuries, should be compared by the jury on the Shimps' enhanced injury claim against the medical providers. *See Jahn*, 773 N.W.2d at 551, 560–61; *see also* Restatement (Third) § 35, cmt (b) (noting the reasons associated with this rule "are various and may apply differentially,

---

[15] *Asher*, 846 N.W.2d at 498 appears in support of reporters' note to comment (a); along with *Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982). *Weems v. Hy–Vee Food Stores, Inc.*, 526 N.W.2d 571, 573 (Iowa Ct. App. 1994) is cited in reporters' notes to comment (c).

depending on the circumstances of the case."). And as the governing law imposes several liability, "each of the defendants is held liable for the amount of damages reflecting the enhanced harm discounted by the comparative share of responsibility assigned by the fact finder to that defendant." *Id.* at cmt (d). In *Jahn*, comparative fault and joint and several liability provisions of chapter 668 apply to parties liable for divisible and indivisible injuries. 773 N.W.2d at 560. And in *Lee v. Small*, 829 F. Supp. 2d 728, 750, n.8 (N.D. Iowa 2011), in a discussion over *Jahn*, the United States District Court for the Northern District of Iowa opined that "it appears likely that the comparative fault concepts of [chapter 668] would also apply to the issue of whether or not a physician's or hospital's malpractice or negligence increased a plaintiff's injuries from conduct of an original tortfeasor." I would follow the suggestions of this authority and affirm the district court's order and remand for further proceedings.

In conclusion: (1) I do not think *DeMoss* prohibits what the medical providers seek to accomplish, thus we need not extend or overrule its holding or even engage in that exercise. (2) The majority finding that this malpractice action is a separate "claim" is misplaced and again does not provide any path to answering the question of whether chapter 668 applies here. (3) Because *Jahn* and section 35 of the Restatement (Third) provide a judicially efficient path to avoid double recovery, yet fully compensate the Shimps, I would apply those evolving

legal concepts so that the appropriate defendant, including the released party, is responsible for its share of the enhanced injury.[16]

---

[16] The majority also touches on the application of the pro tanto rule and concerns over authorities related to indemnity, but here where the fault allocation is required under Iowa Code section 668.7 ("[T]he claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation"), that "equitable share of the obligation" will be assigned to the settling defendant by the trier of fact. *Thomas v. Solberg*, 442 N.W.2d 73, 76 (Iowa 1989). And under *Thomas*, our supreme court opined that "Iowa Code chapter 668 was intended to eliminate the pro tanto credit rule for tort actions tried after July 1, 1984." *Thomas*, 442 N.W.2d at 77. And as for the indemnity question, the medical providers are not vicariously liable to the tortfeasor for all damages, but they do potentially share liability for some of the damages between the two defendants. "Since the adoption of Iowa Code Chapter 668, Iowa courts have distributed responsibility for liabilities between negligent parties who share a common liability based on their respective fault. A negligent party may seek contribution from another negligent party and a court will distribute responsibility for the common liability according to the fault of each party." Jeffrey A. Stone, *The Law of Contribution and Tort-Based Indemnity in Iowa*, 55 Drake L. Rev. 113, 164 (2006). As the author notes "[a] party may seek contribution from another party only if they share common liability" which means that the injured plaintiff can enforce liability against each party individually. *Id.* at 131–32.